IN RE ADOPTION OF KNIPPER.

(No. C-850295—Decided
March 26, 1986.)

*Louis W. Blessing, Jr.,* for appellee.
*Fred Mebs,* for appellant.

BLACK, J. The central issue in this appeal is whether reasonable diligence was used by the petitioning adoptive parents to ascertain the unknown address of the biological mother when they filed their petition for adoption. The probate division held that they did not exercise reasonable diligence. The court granted the biological mother's motion for relief from judgment under Civ. R. 60(B) and set aside both the Final Decree of Adoption and the Interlocutory Order of Adoption. We affirm.

The child in question was born July 28, 1976, the son of Susan Jean Faulkner, then age sixteen, and Richard Michale Faulkner. The child was named James Raymond Faulkner and carried the nickname Jamie. Susan was ap-

parently living by herself and was in a confused state of mind. Through a mutual friend she arranged to have Constance Carr take care of the child, first on weekends when Constance was off work, and later on a continuing basis. Except for a two-week period when Constance moved in with Susan and attempted to help her care for Jamie, the child was brought to Constance's home where she lived with her parents, Nelva J. and James R. Knipper, defendants-appellants in this appeal. Eventually Jamie was kept full time at the Knippers' house. Susan would visit Jamie there and on occasion brought her mother, her grandmother and her uncle to see him.

The child was "placed" with the Knippers on October 27, 1977, by order of the juvenile division of the court of common pleas; he was one year and three months old. We may assume Susan knew of this event. She contends that the Knippers began to make it difficult if not impossible for her to contact Jamie. Susan left Hamilton County for Florida in September 1978, without telling the Knippers she was leaving permanently.

On May 21, 1979, the Knippers petitioned the probate division for Jamie's adoption, alleging that Susan's address was unknown and could not be ascertained with reasonable and ordinary diligence. The adoption was duly accomplished, the Final Decree of Adoption being journalized on February 12, 1980. Susan claims she did not become aware of the adoption until sometime later.

On October 17, 1984, Susan filed a motion for relief from the judgment in the adoption case under Civ. R. 60(B)(3) and (5) and, concurrently, a petition for declaratory judgment, asking the court to declare R.C. 3107.16(B)[1] unconstitu-

---

[1] R.C. 3107.16(B) reads in full:

"Subject to the disposition of an appeal, upon the expiration of one year after an adop-

tion decree is issued the decree cannot be questioned by any person, including the petitioner, in any manner or upon any ground, in-

tional and to hear and determine her 60(B) motion. The declaratory judgment action was dismissed when the 60(B) motion was granted and the adoption was set aside. The probate division's final entry in the adoption case reads in full:

"The Final Decree of Adoption and the Interlocutory Order of Adoption are hereby set aside, for the reason the natural mother was not notified of the pendency of the Petition for Adoption. The attempted service by publication was faulty in that reasonable diligence was not exercised in an effort to determine the address of the natural mother."

The adoptive parents appeal, presenting three assignments of error.

In the second assignment of error, appellants assert that the court's findings were against the manifest weight of the evidence. We disagree. Despite the evidentiary conflict, we find in the record sufficient evidence from which a reasonable mind could find the following facts by a preponderance of the evidence: the adoptive parents knew Susan and had met her mother and her grandmother; the adoptive parents knew that Susan had moved to West Palm Beach, Florida, even though they did not have her street address; they knew the mother's employer but failed to ask about her whereabouts after being told she had married and quit the job; Jamie's birth certificate revealed Susan's maiden name was Palmasano, and there is one Palmasano in the Cincinnati phone book; this person was Susan's grandmother who knew Susan's address in Florida; the adoptive parents failed to contact Mrs. Palmasano; they

knew Susan would not consent to the adoption; they interposed a degree of psychological resistance to the maintenance of either an ongoing relationship or occasional communication between Susan and Jamie. The trial court did not lose its way or create a manifest miscarriage of justice when it found that the adoptive parents did not use reasonable diligence. The second assignment of error has no merit.

The first assignment of error asserts that the trial court failed to apply R.C. 3107.16(B), the statute that purports to bar all direct and collateral attacks on a decree of adoption one year after it is issued. The assignment of error has no merit. In *Armstrong* v. *Manzo* (1965), 380 U.S. 545, the Supreme Court held that the total absence of notice to a divorced father about the adoption proceedings that would terminate all his parental rights deprived him of due process and rendered the adoption decree constitutionally invalid. In the instant case, we do not have a total absence of notice, but the attempt to use constructive notice was flawed by the petitioners' failure to use reasonable diligence in an effort to discover the biological mother's Florida address. We hold that R.C. 3107.16(B) is unconstitutional, and therefore ineffective, as applied in this case, because the Ohio Legislature does not constitutionally have the power to deprive the biological mother of her parental rights without valid constructive notice. We will not characterize appellants' conduct as working a fraud on the court; we hold only that this action did not rise to the degree of reasonable diligence required by the Ohio Rules of Civil Procedure, the Ohio statutes, the

---

cluding fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless, in the case of the adoption of a minor the petitioner has not taken custody of the minor, or, in the case of the adoption of a

minor by a stepparent, the adoption would not have been granted but for fraud perpetrated by the petitioner or the petitioner's spouse, or, in the case of the adoption of an adult, the adult had no knowledge of the decree within the one-year period."

Ohio Constitution and the United States Constitution.

The third assignment of error argues that the probate division had no authority under Civ. R. 60(B) to vacate a final decree on a motion filed more than four years after the decree was journalized. The claim has no merit in this instance. We conclude that an adoption decree, defective because it violated the biological mother's due process rights, may be set aside under clause (5) of Civ. R. 60(B); that is, it may be vacated "for any other reason justifying relief from the judgment." While that clause should be used with caution and is not available unless the grounds are substantial, *Caruso-Ciresi, Inc.* v. *Lohman* (1983), 5 Ohio St. 3d 64, 5 OBR 120, 448 N.E. 2d 1365, it is clear to us that it is proper to invoke it when a parent's constitutional rights to due process have been violated. The motion did not have to be filed within one year after the adoption decree, and under the circumstances, the probate division did not abuse its discretion when it concluded that the motion was filed within a reasonable time.

*Judgment affirmed.*

DOAN, P.J., and HILDEBRANDT, J., concur.