### In re ADOPTION OF HART.

[Cite as *In re Adoption of Hart* (1989), 62 Ohio App.3d 544.]

Court of Appeals of Ohio,
Lucas County.

No. L–88–218.

Decided April 14, 1989.

*Douglas A. Wilkins,* for appellant.

*Susan M. Pioch,* for appellees.

ABOOD, Judge.

This cause is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Probate Division, following a "willful failure" hearing held pursuant to R.C. 3107.07(B) in an adoption proceeding.

The appellant-putative father, John W. Collins, sets forth two assignments of error:

"I. The lower court erred in allowing Appellees to amend their petition, and in failing to grant Appellant's motion to dismiss on the grounds of fraud.

"II. The lower court erred in finding that Appellant had willfully abandoned Sandy and Patrick and willfully failed to care for and support Patrick, and ordering that he had, therefore, waived his consent."

The facts giving rise to this appeal are as follows: In June 1985, Sandra Lee Carmichael moved from Toledo, where she had been living with her parents, to Panama City, Florida, to live with her aunt. Sometime in September 1985, while she was living in Panama City, she met appellant, John W. Collins, and in March 1986, she became pregnant by him. In July 1986, Sandra wanted to

return to her parents in Toledo and John and his mother drove her as far as Kentucky from where she was to take a bus on to Toledo. It was during this trip to Kentucky that Sandra first told John of her pregnancy. Sandra then went on to Toledo to live with her parents, and John returned to Panama City, Florida, to live with his parents. During the remainder of the pregnancy, the most that John actually recalls providing to Sandra in the way of money was an unknown amount for the payment of one prenatal blood test, with the rest of Sandra's bills and expenses being provided for by welfare. While John did call or visit Sandra on a number of occasions during the pregnancy, he was not present at the time of the birth although Sandra specifically asked him to be there. On December 27, 1986, Sandra gave birth to a son, Patrick; both Sandra and John were nineteen years old. Because John was not present at the birth, the father was designated on the birth certificate as "unknown."

Sandra and Patrick remained in Toledo until February 1987, during which time John neither visited nor provided support to Sandra or the child. At that time, Sandra, accepting John's parents' invitation, left Toledo and went to live with them in Youngstown, Florida. During the four months that she and Patrick lived with John's parents, John was also staying there, but was openly dating someone else. From February 1987 to June 1987, although John did have regular personal contact with the child, he provided no support to either Sandra or Patrick; they were all provided for during that period by John's parents. In June 1987, Sandra wanted to leave Florida and return to Toledo because, as she testified, John's relationship with his new girlfriend, Sharon, was upsetting her. In July 1987, John, with Sharon, drove Sandra and Patrick back to Toledo. John dropped Sandra off in Toledo and then spent the rest of the summer traveling around Kentucky and Georgia with Sharon during which time he neither visited nor provided any support to Sandra or Patrick.

By August 1987, Sandra had decided to place Patrick for adoption and on August 24, 1987, Sandra took Patrick to the home of the appellees, William and Ramona Hart, to discuss doing so. The testimony indicates that during these discussions the only mention that was made of Patrick's father was a statement by Sandra that the birth certificate shows the father as "unknown," with no further inquiry made by the Harts and no further information provided by Sandra. On August 29, 1987, Sandra placed Patrick with the Harts for adoption. By this time, John was back living with his parents who had moved from Florida to Cincinnati, Ohio. On September 3, 1987, Sandra called the Collins home and spoke with John's mother, telling her that she was thinking about putting Patrick up for adoption. On September 4, 1987, the necessary consent having previously been executed by Sandra, the Harts filed their petition to adopt Patrick in the Lucas County Probate Court indicating therein that Patrick's father was "unknown." On September 5, 1987, John

called the Harts' home and told them that he was Patrick's father and that he wanted the child back. The Harts told John that he should get an attorney. On December 8, 1987, John filed a parentage action in the Lucas County Court of Common Pleas, Juvenile Division. Later on in December, Sandra gave the Harts the documents for John's parentage action and on January 22, 1988, the Harts amended their petition for adoption to show John W. Collins as the father of Patrick.

On January 25, 1988, John's motion to intervene in the adoption proceedings was granted, and John filed an objection to the adoption and a request for dismissal of the petition on the grounds of fraud. John's request for dismissal was denied, but a willful failure hearing was set on his objection to the adoption, pursuant to R.C. 3107.07(B), to determine the issue of whether or not John's consent to the adoption was required. On April 8, 1988, a consent entry was filed in John's parentage action in juvenile court establishing his paternity. On May 5, 1988, John filed another motion to dismiss and for attorney's fees which was denied on May 13, 1988. On May 31, 1988, the willful failure hearing was held. On July 6, 1988, the court issued its memorandum and order in which, applying R.C. 3107.07(B), it found that John had willfully abandoned and willfully failed to care for and support Patrick, that he had abandoned Sandra during her pregnancy and up until she placed Patrick, and that the consent of John W. Collins to the adoption is not necessary. The case was continued for hearing on the best interests of the child, and this appeal was taken.

I

Appellant's first assignment of error is in two parts: first, the lower court erred in allowing appellees to amend their petition; and second, the lower court erred in failing to grant appellant's motion to dismiss on the grounds of fraud.

Beginning with the first part of the first assignment of error, while appellant claims that the lower court erred in allowing the amendment to the petition for adoption, he does not elaborate further in his brief as to the basis for that assertion. The record shows that on January 22, 1988, appellees filed their motion to amend the petition to add the name and address of appellant on the grounds that new evidence was discovered tending to establish him as Patrick's putative father. Here, as in all civil proceedings, the granting of leave to amend pleadings lies within the discretion of the trial court. Civ.R. 15(A); *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 5, 12 OBR 1, 5, 465 N.E.2d 377, 381. Appellant in this case has failed to show that the probate court abused its discretion in granting appellees leave to amend their petition for

adoption. Accordingly, this court finds that the probate court did not err in granting appellees leave to amend their petition for adoption.

In the second part of the first assignment of error, appellant asserts that the lower court erred in denying his motion to dismiss the adoption petition on the grounds of fraud.

 Before discussing this part of appellant's first assignment of error, it must be noted that the motion to dismiss that is the subject of this assignment of error was filed in the probate court and denied on January 25, 1988. In his brief in this court, appellant includes arguments that (a) are based on testimony that was received at the May 31, 1988 willful failure hearing and (b) go significantly beyond the scope of the issues that were raised in the motion itself. This court's consideration of this part of appellant's first assignment of error will, therefore, be limited to those issues and facts that were before the probate court on the January 25, 1988 motion to dismiss.

The issues that appellant raised in that motion and that are now before this court in this assignment of error arise out of the undisputed fact that appellees originally filed their petition for adoption stating that the father of Patrick was "unknown." Appellant argued in that motion that since Sandra acknowledged that John was Patrick's father on January 22, 1988, at a pretrial on his parentage action, there is no question that appellees knew or should have known that appellant was the father and, therefore, the petition for adoption was fraudulent and should be dismissed pursuant to R.C. 3107.16.[1]

In his brief in this court appellant attempts to bolster his allegations of fraud by appellees, by arguing that *In re Adoption of Knipper* (1986), 30 Ohio App.3d 214, 216, 30 OBR 371, 373, 507 N.E.2d 436, 438, imposed a duty on appellees to exercise reasonable diligence to locate Patrick's father and that their failure to do so constitutes fraud as provided for in R.C. 3107.16.

---

1. R.C. 3107.16 provides:

"(A) Appeals from the probate court are subject to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.

"(B) Subject to the disposition of an appeal, upon the expiration of one year after an adoption decree is issued, the decree cannot be questioned by any person, including the petitioner, in any manner or upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless, in the case of the adoption of a minor, the petitioner has not taken custody of the minor, or, in the case of the adoption of a minor by a stepparent, the adoption would not have been granted but for fraud perpetrated by the petitioner or the petitioner's spouse, or, in the case of the adoption of the an adult, the adult had no knowledge of the decree within the one-year period."

The effect of R.C. 3107.16(B) is to cut off rights to attack an adoption after one year from the issuance of the final decree. *In re Adoption of Knipper, supra,* concerns the application and constitutionality of R.C. 3107.16(B) in certain limited circumstances. In *Knipper,* the petitioners knew the natural mother but alleged in their petition that her address was unknown and could not be ascertained with reasonable diligence. A final decree of adoption was entered without the natural mother ever becoming aware of the adoption proceedings. Almost four years later, the natural mother filed a motion for relief from the judgment granting the adoption. The probate court granted her motion and set aside the adoption decree. The appellate court, affirming the decision of the probate court, held that R.C. 3107.16(B) could not constitutionally bar an attack on an adoption decree over one year after its issuance, where reasonable diligence was not exercised in seeking the mother's address, thus depriving her of her parental rights without any notice of the adoption proceedings. *In re Adoption of Knipper,* at paragraph one of the syllabus, 30 Ohio App.3d 214, 30 OBR 371, 507 N.E.2d 436.

Clearly, neither R.C. 3107.16(B) nor the *Knipper* case is applicable to the facts of this case. Here, appellant did ultimately receive notice of the proceedings and did have an opportunity to contest the adoption, with the final decree yet to be rendered. For this court to apply the law of the *Knipper* case to the facts and circumstances of this case would only serve to extend that law beyond its stated application and place requirements on adoption petitioners where the applicable statutes clearly place none.[2]

 The only basis for a finding of fraud on the part of appellees in this case would be if there was proof that they had actual knowledge of the fact that appellant was Patrick's father and knowingly failed to disclose that fact.

 Upon consideration of all of the evidence that is applicable to the issues raised in this assignment of error, this court finds that the knowledge possessed by Sandra cannot be imputed to the appellees, William and Ramona Hart, and that there was not evidence before the probate court to support a conclusion that appellees themselves had actual knowledge that appellant was Patrick's father when they filed their petition.

Accordingly, as to both parts, this court finds appellant's first assignment of error not well taken.

## II

In his second assignment of error appellant asserts that the lower court erred in finding that appellant had willfully abandoned Sandra and Patrick

---

2. R.C. 3107.06 and 3107.07.

and willfully failed to care for and support Patrick, and ordering that he had, therefore, waived his consent to the adoption.

The parties agree that during all times at issue in this case appellant is to be considered, for purposes of these proceedings, as the putative father of Patrick. The rights of putative fathers in adoption proceedings are governed by R.C. 3107.06 and 3107.07(B).

R.C. 3107.06 provides in pertinent part:

"Unless consent is not required under section 3107.07 of the Revised Code, *a petition to adopt a minor may be granted only if written consent to the adoption has been executed by* all of the following:

"* * *

"(F) *Subject to division (B) of section 3107.07 of the Revised Code, the putative father, if he:*

"(1) Is alleged to be the father of the minor in proceedings brought under sections 3111.01 to 3111.19 of the Revised Code at any time before the placement of the minor in the home of the petitioner;

"(2) Has acknowledged the child in a writing sworn to before a notary public at any time before the placement of the minor in the home of the petitioner;

"(3) Has signed the birth certificate of the child as an informant as provided in section 3705.14 [3705.09] of the Revised Code;

"(4) *Has filed an objection to the adoption* with the agency having custody of the minor or the department of human services at any time before the placement of the minor in the home of the petitioner, or *with the probate court* or the department of human services *within thirty days of the filing of a petition to adopt the minor or its placement in the home of the petitioner, whichever occurs first.*" (Emphasis added.)

R.C. 3107.06(F) is expressly subject to R.C. 3107.07(B), which provides:

*"Consent to adoption is not required of any of the following:*

"* * *

"(B) *The putative father of a minor if the putative father fails to file an objection with the court,* the department of human services, or the agency having custody of the minor *as provided in division (F)(4) of section 3107.06 of the Revised Code, or files an objection with the court,* department, or agency *and the court finds, after* proper service of notice and *hearing, that* he is not the father of the minor, or that *he has willfully abandoned or failed to care for and support the minor, or abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or*

*its placement in the home of the petitioner, whichever occurs first* [.]"
(Emphasis added.)

R.C. 3107.06(F) and 3107.07(B), as applied to the facts of this case, clearly provide two alternatives for a putative father to exercise his right to have his consent required before the adoption can take place: (a) where a putative father files an objection to the adoption within thirty days of the filing of the petition or placement, R.C. 3107.06(F)(4); and (b) where a putative father files an objection after thirty days from the filing of the petition or placement and the court, after a hearing, does not find that he willfully failed to care for and support the child, R.C. 3107.07(B). Since appellant filed his objection to the adoption on January 25, 1988, four months after the adoption petition was filed, it is the second part of R.C. 3107.07(B) that must be applied to the facts of this case.

Appellant's arguments in support of his second assignment of error are in two parts: first, the lower court's finding that he willfully abandoned Sandra and Patrick and willfully failed to care for and support Patrick, and that his consent to the adoption is not necessary, is against the manifest weight of the evidence and contrary to the provisions of R.C. 3107.07(B); and second, the lower court could not fairly analyze the circumstances since there was not a full year preceding the date of the adoption, and the court should impute the one year time requirement in R.C. 3107.07(A) to R.C. 3107.07(B).

As to appellant's first argument in support of the second assignment of error, in *In re Adoption of Peters* (1961), 113 Ohio App. 173, 175, 17 O.O.2d 141, 143, 177 N.E.2d 541, 543, the Lucas County Court of Appeals construed the term "willful failure," when used in adoption proceedings, to mean intentional as opposed to accidental or involuntary failure. See, also, *In re Adoption of Biddle* (1958), 168 Ohio St. 209, 6 O.O.2d 4, 152 N.E.2d 105. In this case the burden was on appellees to demonstrate by clear and convincing evidence that appellant willfully abandoned or failed to care for and support Patrick, or that he willfully abandoned Sandra during her pregnancy and up to the time she surrendered Patrick. *In re Adoption of McDermitt* (1980), 63 Ohio St.2d 301, 305–306, 17 O.O.3d 195, 197–198, 408 N.E.2d 680, 683–684. Whether or not appellees proved willful abandonment or willful failure to care for and support was a question of fact for the determination of the probate court, which determination will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Adoption of Biddle, supra; In re Adoption of McDermitt, supra.*

This court has thoroughly reviewed the testimony adduced at the willful failure hearing held on May 31, 1988. The record shows that for the

last five months of her pregnancy, Sandra returned to Toledo to live with her parents and was supported by welfare. John remained in Florida with his parents during this time and, although he did occasionally visit or telephone Sandra, he provided no support to her, despite her requests, other than paying for one prenatal blood test. Although Sandra had asked John to be present at Patrick's birth, he did not come. About two months after Patrick was born, John's parents came to visit Sandra and Patrick and invited them to live in Florida at their home. Sandra and Patrick returned to Florida and lived with John's parents where John also resided, for approximately four months. During this time, John had two different jobs but voluntarily quit both after a few weeks leaving Sandra and Patrick to be supported by his parents. During this period, John, himself, provided no support to either Sandra or Patrick. John continued to date his girlfriend, Sharon, throughout the months Sandra and Patrick lived in the same home with John. After four months Sandra expressed her desire to return to Toledo and in July 1987, John and Sharon drove Sandra and Patrick to Toledo, leaving them with Sandra's parents. John and Sharon then continued on to Kentucky to live for a month and then to Georgia to vacation. From the time appellant dropped Sandra and Patrick in Toledo, until Sandra put Patrick up for adoption in September 1987, Sandra did not know where appellant was. He did not contact her or Patrick, and they received no support from him.

From our analysis of the record we find that there was competent, credible evidence to support the probate court's findings that John had willfully abandoned and willfully failed to care for and support Patrick and that John had abandoned Sandra during her pregnancy and up until she placed Patrick for adoption. We therefore find that the probate court's findings were not against the manifest weight of the evidence and that the first part of appellant's second assignment of error is not well taken.

■■■ In his second argument in support of his second assignment of error appellant argues that the one year time period provided for in R.C. 3107.-07(A)[3] should be imputed to R.C. 3107.07(B). R.C. 3107.07(A) governs the consent of a *parent* to an adoption and expressly provides for a one year time period to analyze the conduct of the parent toward the child. R.C. 3107.07(B),

---

3. R.C. 3107.07 provides:
 "Consent to adoption is not required of any of the following:
 "(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

on the other hand, governs the consent of *putative* fathers to an adoption and does not provide any specific time period for analysis of their conduct. Our review of the sections of the Ohio Revised Code which address consent to adoption [4] shows that the legislature clearly intended to treat *putative fathers* differently from *parents*. The language of R.C. 3107.07(B) is clear and unambiguous and provides no basis for appellant's assertion that the one year time requirement in R.C. 3107.07(A) should be imputed to R.C. 3107.07(B). His reliance upon *In re Adoption of McDermitt, supra,* and the dissent in *In re Schwartz* (Jan. 3, 1985), Cuyahoga App. No. 48421, unreported, 1985 WL 7416, is misplaced. Both cases deal with an analysis of R.C. 3107.07(A) and do not espouse the imputation of the one year time period contained therein to R.C. 3107.07(B).

Upon consideration of the above, this court finds that the one year time requirement of R.C. 3107.07(A) is not to be applied to R.C. 3107.07(B), and therefore the lower court's determination was not contrary to the provisions of R.C. 3107.07(B).

Accordingly, this court finds the second part of appellant's second assignment of error not well taken.

Upon consideration whereof, this court finds that appellant's first and second assignments of error are not well taken and that substantial justice has been done the party complaining. It is therefore ordered that the judgment of the Lucas County Court of Common Pleas, Probate Division, is affirmed. This case is remanded to the probate court for further proceedings not inconsistent with this opinion. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

---

**4.** R.C. 3107.07(A) and 3107.07(B).