OPINION
{¶ 1} In these two consolidated cases, appellants, the potential adoptive parents of Baby F. ("appellants"), and Adoption by Gentle Care ("Gentle Care"), appeal from a judgment of the Franklin County Common Pleas Court, Probate Division. That judgment dismissed appellants' petition to adopt Baby F. after holding that the consent of the baby's putative father was necessary for the adoption to proceed. In accordance with R.C.3107.17, this court sua sponte sealed the appellate record. Accordingly, we will not refer to any of the parties by name in this decision.
 {¶ 2} Baby F.'s birth mother and putative father dated for a number of years, but never married. At some point in 2002, they moved to Sandusky, Ohio, to live together in a relative's house. In June or July of 2002, the birth mother discovered that she was pregnant. After this discovery, the couple began fighting over a number of issues. In August of 2002, the birth mother moved out of the house and moved in with her mother who lived only a few blocks away. Shortly thereafter, the putative father moved into a relative's house next door to the birth mother's new residence. On September 3, 2002, the two got into a physical altercation. That altercation led to the issuance of mutual temporary protective orders that prevented the couple from seeing each other. In violation of those orders, the two continued to see and talk to each other. However, the putative father was arrested in September and, again, in October for violating the temporary protective order by attempting to talk to the birth mother. The putative father did not attempt to talk to the birth mother after he was arrested but tried to convey messages to her through his mother and other friends and family. On December 21, 2002, the putative father was arrested on a theft charge and imprisoned. The birth mother and putative father did not see each other after he was arrested. While in jail, and before Baby F. was born, the putative father registered with Ohio's putative father registry. Baby F. was born on February 24, 2003, and placed in appellants' home three days later.
 {¶ 3} On March 27, 2003, appellants filed a petition to adopt Baby F. The petition and a judgment entry setting a hearing for that petition was sent by certified mail to the putative father at the Lorain Correctional Institute. On April 14, 2003, an employee at the institute signed for the certified mailing. The putative father filed objections to the petition on June 4, 2003. The matter was referred to a magistrate to determine whether the putative father's consent to the adoption was necessary. Appellants claimed that the putative father's consent was not necessary because he willfully abandoned the birth mother during her pregnancy and because he did not file objections to the petition for adoption within 14 days after being served. After a hearing, the magistrate determined that the putative father's consent to the adoption was necessary. The magistrate determined that the putative father did not willfully abandon the birth mother and did not receive timely notice of the petition. Accordingly, because the putative father's consent was required to complete the adoption and, because that consent had not been given, the magistrate dismissed appellant's petition.
 {¶ 4} Appellants and Gentle Care filed objections to the magistrate's decision. The trial court denied those objections and adopted the magistrate's decision. The trial court found adequate evidence to support the magistrate's finding that the putative father did not willfully abandon the birth mother. The trial court also addressed the issue of notice. The trial court assumed that the putative father received the notice when an employee of the correctional institute signed for it. The trial court, however, determined that the notice itself was inadequate to protect the putative father's constitutional due process rights because it failed to inform the putative father that his consent to the adoption would not be necessary if he failed to file objections to the petition within 14 days. Therefore, the trial court adopted the magistrate's decision and dismissed appellants' adoption petition.
 {¶ 5} Appellants appeal, assigning the following errors:
1. The trial court erred in failing to find that the birth father willfully abandoned the birth mother during the pregnancy and up to the time of placement.
2. The trial court erred in finding that birth father was not required to file his objection to the adoption petition within fourteen days pursuant to Ohio Revised Code § 3107.03(K) [sic].
 {¶ 6} Gentle Care also appeals, assigning the following errors:
1. The trial court erred in its conclusion that Petitioners failed to prove that the birth father willfully abandoned the birth mother during the pregnancy and up to the time of placement.
2. The trial court erred in adopting the Magistrate's finding that birthfather was not required to file his objection to the adoption petition within fourteen days of notice of the filing of the adoption, pursuant to R.C. 3107.07(K).
 {¶ 7} Appellants' and Gentle Care's first assignments of error both address the trial court's finding that the putative father did not willfully abandon the birth mother. We will address these assignments of error together.
 {¶ 8} The right of a natural parent to the care and custody of his children is fundamental in law. Santosky v. Kramer
(1982), 455 U.S. 745, 753, 102 S.Ct. 1388. Adoption terminates those fundamental rights. R.C. 3107.15(A)(1). R.C. Chapter 3107 governs adoption proceedings in the state of Ohio. A petition to adopt a minor may be granted only with the consent of the minor's mother and, in this case, the putative father. R.C. 3107.06. In certain instances, however, parental consent is not required. See R.C. 3107.07. Any exception to the requirement of parental consent to an adoption must be strictly construed so as to protect the right of natural parents to raise and nurture their children. In re Schoeppner's Adoption (1976), 46 Ohio St.2d 21,24.
 {¶ 9} A putative father's consent is not necessary if he has willfully abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor. R.C.3107.07(B)(2)(c). Appellants must demonstrate by clear and convincing evidence that the putative father willfully abandoned the mother of the minor. In re Adoption of Hart (1989),62 Ohio App.3d 544, 552; In re Adoption of Suvak, Allen App. No. 1-03-51, 2004-Ohio-536, at ¶ 7. Whether such an allegation has been proven by clear and convincing evidence is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. In re Hart, supra; see, also, In re Adoption ofVest (Mar. 13, 2001), Franklin App. No. 00AP-1150. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 281. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 10} The trial court determined that appellants failed to prove the putative father willfully abandoned the birth mother. There is competent and credible evidence to support that decision. The birth mother testified that the putative father attempted to schedule doctor's appointments for her, but that she refused to go to such appointments because she was considering an abortion. After the birth mother moved out of their shared house, the putative father moved to a house next door. Although he admitted doing this to be a nuisance, it allowed the putative father the opportunity to talk and spend time with the birth mother. They both testified that the two continued to see each other after the birth mother moved out of their shared house. Even after the two got into a fight and mutual temporary protective orders were entered, the putative father continued attempts to reconcile with the birth mother. After he was twice arrested for violating the temporary protective order against him, he still attempted to communicate with the birth mother through mutual friends and family. The putative father and two of his friends testified that he purchased, on at least one occasion, maternity clothes for the birth mother and diapers for the baby. Finally, while he was in jail, the putative father gave money to his mother for the birth mother's assistance and registered with Ohio's putative father registry.
 {¶ 11} This testimony is competent and credible evidence to support the trial court's judgment that the putative father did not willfully abandon the birth mother. Although there was not a great deal of contact between the couple after the birth mother moved out of the shared house, the presence of mutual temporary protective orders prohibiting any contact between the two, coupled with the putative father's fear of further arrest, support the finding that any abandonment by the putative father was not willful. Cf. In re Vest, supra (father's limited contact with birth mother due to the actions of the maternal grandmother negates willfulness). Accordingly, appellants' and Gentle Care's first assignments of error are overruled.
 {¶ 12} Appellants and Gentle Care both contend in their second assignments of error that the trial court erred in its determination that the notice received by the putative father violated his due process rights. Again, we will address these assignments of error together.
 {¶ 13} A putative father's consent to an adoption is not necessary if he receives notice of a petition for adoption and does not file objections to the petition within 14 days. R.C.3107.07(K). Although the magistrate found that the putative father was not timely served with notice, the trial court set aside questions of service and assumed the putative father was properly served. For purposes of this opinion, we make the same assumption. See State v. Jones (Oct. 16, 2000), Warren App. No. CA2000-02-015 (service on incarcerated person proper when made on an authorized prison official). Instead, the trial court concluded that the notice the putative father received was inadequate because it did not inform him that his consent to the adoption would no longer be necessary and his parental rights would be forfeited if he failed to file objections to the adoption petition within 14 days after being served. We agree.
 {¶ 14} The Fourteenth Amendment to the United States Constitution prohibits the deprivation of any person's life, liberty, or property without due process of law. The relationship between a parent and child is a liberty interest protected by theFourteenth Amendment. Santosky, supra, at 753-754; In reAdoption of Zschach (1996), 75 Ohio St.3d 648, 653. An unwed father's interest in a relationship with his child acquires protection under the Fourteenth Amendment when he attempts to come forward to participate in the rearing of his child and accepts some measure of responsibility for the child's future.Lehr v. Robertson (1983), 463 U.S. 248, 261-262,103 S.Ct. 2985. The putative father demonstrated his attempt to assume a role in his child's life and accepted responsibility for the child by registering with Ohio's putative father registry before the birth of Baby F. Id. at 264. ("By mailing a postcard to the putative father registry, [the putative father] could have guaranteed that he would receive notice of any proceedings to adopt Jessica.") This affirmative step to accept responsibility for Baby F. vested the putative father with a liberty interest that could not be taken from him without due process of law. Id.
 {¶ 15} Due process of law affords the right to adequate notice and an opportunity to be heard before any parental rights which may exist are terminated. See In re Adoption of Greer
(1994), 70 Ohio St.3d 293, 298. "An elementary and fundamental requirement of due process in any proceeding * * * is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent.Hanover Bank Trust Co. (1950), 339 U.S. 306, 314,70 S.Ct. 652. Notice that is confusing, misleading or inaccurate is insufficient to meet procedural due process requirements because such notice does not adequately protect a person's due process right to be heard. Pickens v. Shelton-Thompson (2000),300 Mont. 16, 3 P.3d 603, at ¶ 18; see, also, Walters v. Reno
(C.A. 9, 1998), 145 F.3d 1032, 1042-1043 (finding notice that confused and misled those who received it constitutionally inadequate); cf. Greer, supra, at 302 (noting that former version of notice of hearing used by probate court conveyed misleading information to putative fathers and should be reviewed or amended).
 {¶ 16} The notice the putative father received consisted of a two-page document entitled "Petition for Adoption of Minor" ("petition") and a one-page document entitled "Judgment Entry Setting Hearing and Ordering Notice" ("notice of hearing"). The petition informed him that Baby F. was living with adoptive parents who sought to formally adopt Baby F. The putative father was not named in the petition as a person whose consent to the adoption was necessary, nor was he named as a person whose consent to the adoption was not necessary. The petition also did not inform the putative father that if he objected to the adoption, he had to file objections to the petition within 14 days, and that if he did not timely object, the adoption would proceed without his consent. The notice of hearing informed the putative father that a hearing on the petition would be held on August 28, 2003.
 {¶ 17} This notice did not comply with the putative father's due process rights. Neither the petition nor the notice of hearing informed the putative father of the need to file objections within 14 days if he objected to the adoption. R.C.3107.07(K). Moreover, the notice of hearing scheduled a hearing on the petition for adoption four months later — August 28, 2003. In the absence of any other information, the notice of hearing may have suggested to the putative father that he would have the opportunity to assert his parental rights at the scheduled hearing. Cf. Walters, supra, at 1043 (finding inadequate notice where individual never learns how to take advantage of procedures because combined effect of notice forms is confusion); Pickens,
supra (noting that notice which provided individual with incomplete procedural requirements to obtain judicial review was misleading and inadequate). Because the notice failed to inform the putative father of the need to file objections to the petition within 14 days (if he desired to object to the petition), it may have misled the putative father about what he needed to do to protect his rights.
 {¶ 18} To comply with due process, the petition and/or the notice of hearing must inform the putative father of the procedure necessary for him to assert his parental rights, i.e., that he must file any objections he has to the petition within 14 days. The right to be heard "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or consent."Mullane, supra, at 314. The petition and notice of hearing received in this case did not inform the putative father of that procedure and, in fact, may have misled him to believe that he had until the date of the hearing (approximately four months), rather than 14 days, to present his objections to the adoption. Therefore, the petition and notice of hearing was insufficient to satisfy the putative father's right to due process. Walters andPickens, supra.
 {¶ 19} Providing this important information to the putative father would only require a minimal change in the petition and/or the notice of hearing. Cf. Walters, supra, at 1044. Requiring these forms to notify a putative father of the 14-day period to assert objections would not unduly thwart the state's interest in protecting the best interest of the child by providing the child with a permanent and stable home in an expeditious manner. SeeIn re Adoption of Zschach, supra, at 651. Without proper notice, the risk that a putative father may unknowingly forfeit his parental rights by not filing objections to the adoption petition within 14 days is substantial. Cf. Mathews v. Eldridge
(1976), 424 U.S. 319, 96 S.Ct. 893 (balancing test to determine sufficiency of procedure used weighs individual's interest at stake and possible risk of erroneous deprivation of that interest versus the government's interest in using the current procedure).
 {¶ 20} In conclusion, the notice the putative father received in this case did not satisfy his right to due process of law. The notice failed to notify him of the limited time frame for asserting his parental rights and may have misled him to believe that he could object to the adoption at the scheduled hearing. Because the notice was not adequate to protect the putative father's due process rights, the trial court properly determined that his consent to the adoption could not be excused pursuant to R.C. 3107.07(K) and, therefore, his consent was still necessary for the adoption to proceed. Without his consent, the trial court properly dismissed appellants' petition to adopt Baby F.R.C.3107.14(D). Accord-ingly, we overrule appellants' and Gentle Care's second assignments of error.
 {¶ 21} Having overruled appellants' and Gentle Care's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.
Judgment affirmed.
Bowman and Deshler, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.