OPINION
{¶ 1} Appellant-petitioner Tamika Snow appeals a decision of the Montgomery County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's decision wherein the parental rights of Snow were terminated, and permanent custody of K.C., K.C., K.C., and K.S. (hereinafter "the children") was *Page 2 
awarded to Montgomery County Children's Services (hereinafter "MCCSB"). The trial court adopted the magistrate's decision in a judgment entry filed on June 8, 2007. Snow filed a timely appeal with this Court on June 26, 2007.
 {¶ 2} On November 2, 2004, MCCSB took emergency custody of the children after Snow was arrested for child endangerment.[1] After the children had been removed from her care, Snow met with a caseworker from MCCSB in order to develop a case plan aimed at reunification. Specifically, the case plan required Snow to obtain a crisis care assessment, as well as a psychological and parenting assessment, and follow through with any recommendations made regarding those assessments. Further, Snow was required to obtain and maintain stable housing and employment. Lastly, the case plan required her to consistently visit with her children.
 {¶ 3} On February 3, 2005, the children were adjudicated dependent, and MCCSB was granted temporary custody in order to provide Snow with additional time in which to complete the case plan objectives. In July of 2005, Snow left Ohio and traveled to Wisconsin. Snow did not return to Ohio until September of 2005. It is undisputed that during the time Snow was in Wisconsin, she did not visit with her children, nor did she work on her case plan objectives.
 {¶ 4} After determining that reunification was not possible within a reasonable amount of time, MCCSB filed a motion requesting permanent custody of the children on September 16, 2005. A trial was held before the magistrate on December 7, 2005, March 15, 2006, and May 2, 2006, in order to determine if MCCSB should be granted *Page 3 
full custody of the children. In two entries filed on September 5 and 7, 2006, the magistrate granted full custody of the children to MCCSB after determining that reunification was impossible because Snow had failed to complete the objectives as provided in her case plan.
 {¶ 5} Snow filed objections to the magistrate's decision on September 19, 2006. On January 29, 2007, Snow filed supplemental objections to the magistrate's decision in which she argued that had she been provided with additional time, she would have been able to complete her case plan objectives. The trial court disagreed and adopted the decision of the magistrate on June 8, 2007, and affirmed the award of permanent custody to MCCSB.
 {¶ 6} It is from this judgment that Snow now appeals.
 II {¶ 7} Snow's first assignment is as follows:
 {¶ 8} "THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THE MINOR CHILDREN TO THE MONTGOMERY COUNTY CHILDREN'S SERVICES BOARD WHEN THE MCCSB DID NOT MAKE REASONABLE EFFORTS TO REUNITE THE MINOR CHILDREN WITH THEIR MOTHER."
 {¶ 9} Snow argues that the trial court erred in reaching findings of fact and conclusions of law which indicate that reunification with the children is not possible within a reasonable period of time when this was not supported by clear and convincing evidence. We disagree.
 {¶ 10} A parent has a fundamental right to care for and have custody of his or her child. In re Schaeffer Children (1993),85 Ohio App.3d 683, 689, 621 N.E.2d 426. *Page 4 
Therefore, a court should only terminate a parent's rights as an alternative of last resort. In re Wise (1994), 96 Ohio App.3d 619, 624,645 N.E.2d 812. A trial court may terminate a parent's right to his or her child and grant permanent custody to a government agency if it determines by clear and convincing evidence that the grant of permanent custody is in the best interests of the child and finds that one of the factors listed in R.C. 2151.414(B)(1) applies. R.C. 2151.414(B)(1). An appellate court gives great deference to a trial court's determination in custody matters. Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846. Therefore, a trial court's decision awarding permanent custody will be affirmed if it is supported by sufficient evidence to meet the clear and convincing standard of proof. In re Dylan C. (1997),121 Ohio App.3d 115, 121, 699 N.E.2d 107.
 {¶ 11} In determining whether the children cannot be placed with either parent within a reasonable period of time or should not be placed with either parent within a reasonable period of time, the trial court must take into account several factors in R.C. § 2151.414(E), which states in pertinent part:
 {¶ 12} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent hasfailed continuously and repeatedly to substantially remedy theconditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents *Page 5 
for the purpose of changing parental conduct to allow them to resume and maintain parental duties. (Emphasis added.)
 {¶ 13} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section * * *;
 {¶ 14} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
 {¶ 15} Once the trial court weighs the factors under R.C. § 2151.414(E), it must then determine whether permanent custody is in the best interests of the child. In determining the best interests of a child, the court must consider all of the relevant factors including:
 {¶ 16} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private placing agencies for twelve or more months of a consecutive twenty-two month *Page 6 
period ending on or after March 18, 1999;
 {¶ 19} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 21} If a trial court determines that granting a motion for permanent custody would be in the best interests of the child, before the court can grant the motion it must also find that one of the following factors exists:
 {¶ 22} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 23} "(b) The child is abandoned.
 {¶ 24} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 25} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1).
 {¶ 26} While Snow concedes that she did not complete the majority of the *Page 7 
objectives in her case plan, she contends that MCCSB failed to make a reasonable effort assist her in completing the objectives so that she could regain custody of her four children. She also alleges that MCCSB filed for permanent custody prematurely. We disagree.
 {¶ 27} As stated previously, Snow's case plan consisted of the following objectives: 1) obtain a crisis care assessment and follow through with any recommendations; 2) secure stable and adequate housing suitable for her and the children; 3) secure and maintain stable employment; and 4) consistently visit with her children.
 {¶ 28} With respect to the first objective, Snow completed her parenting and psychological assessment in March of 2005. She received recommendations regarding her substance abuse and was told to attend parenting classes that specifically addressed the management of multiple children. Snow also attended a Crisis Care assessment in January of 2005, and was referred to the CAM I program, a dual diagnosis program for both substance abuse and mental health issues. Snow missed two initial appointments to begin the program, and was required to return to the CAM I program for a new referral. Snow received a new referral to the program and made an appointment scheduled for July 27, 2005. However, Snow also failed to attend that appointment because she decided to travel to Wisconsin to visit her allegedly sick father. Snow did not inform MCCSB that she was leaving Ohio, and she did not return until September of 2005. During the time she was allegedly in Wisconsin, Snow did not have any contact with her children. When she returned, Snow obtained a third referral from Crisis Care and set an assessment date with CAMI *Page 8 
for November 22, 2005. Although Snow testified at trial that she attended the CAMI assessment, she did not do so until approximately one year after receiving the objective in her case plan from MCCSB.
 {¶ 29} The record reflects that Snow did complete the parenting and psychological assessment pursuant to the case plan. She did not, however, attend any of the parenting classes that were recommended as a result of the assessment. In spite of being provided with numerous referrals, Snow claimed that she did not attend any of the parenting classes because of scheduling conflicts with the CAMI classes. Snow, however, did not start allegedly attending the CAMI classes until over a year after she was instructed to do so.
 {¶ 30} The record further demonstrates that Snow was unable to secure stable housing for herself, as well as the children. The trial court noted that from the time that the children were removed until the hearing on March 15, 2006, Snow was unable to maintain a consistent address. At the time of the hearing on March 15, 2006, Snow was residing with "friends" at an unknown address. Additionally, at the time of the hearings, Snow testified that she was unable to secure "Section 8" housing because she had outstanding balances with DMHA and Western Manor.
 {¶ 31} Additionally, Snow did not find stable employment as required by the case plan. In fact, Snow was referred to the Job Center in November of 2005 when the children were initially removed from her care. Snow argued that she was unable to get a job because she could not get an Ohio State Identification card since her mother would not send her birth certificate from Wisconsin. The record establishes, however, that Snow possessed a State I.D. as early as December of 2005, and she still did not *Page 9 
have a job in March of 2006. Although Snow blamed her inability to secure a job on her depression, the record demonstrates that she has no physical limitations rendering her unemployable, nor is she receiving any type of disability payments from the state or county.
 {¶ 32} With the exception of the period from July of 2005 through September of 2005, the trial court found that Snow attempted to maintain contact with her children and visited them frequently. This, however, is the only objective in her case plan that Snow substantially completed. Thus, we agree with the trial court and hold that clear and convincing evidence was presented that Snow did not substantially comply with the case plan provided by MCCSB in order to regain custody of the children. The record further establishes by clear and convincing evidence that it was in the best interest of the children to be placed in the permanent custody of MCCSB. Although Snow does not assign this as error, it should be noted that the trial court held that no relatives of either Snow or the children's father, Anthony Camp, were found to be willing or appropriate candidates for placement of the children. Thus, placement within a reasonable time could not be achieved with any of the children's parents or other relatives.
 {¶ 33} Snow's first assignment of error is overruled.
 III {¶ 34} Snow's second and final assignment of error is as follows:
 {¶ 35} "THE TRIAL COURT ERRED IN NOT ORDERING THE ATTENDANCE AT TRIAL OF ONE OF THE MOTHER'S KEY WITNESSES."
 {¶ 36} In her final assignment, Snow contends that the trial *Page 10 
failed to compel the testimony of Ms. Bidorf, a caseworker at Day Mont who assisted Snow at some point during her attempted completion of the case plan objectives. The witness had been subpoenaed to testify at the custody hearings on behalf of Snow, but she had failed to appear twice, once on March 15, 2006 and May 2, 2006. At the end of the hearing on May 2, 2006, Snow's counsel as well as the guardian ad litem assigned to the case both argued that the court should compel the testimony of Ms. Bidorf. The magistrate agreed and scheduled an additional hearing for June 7, 2006. The magistrate also stated that he would refer the matter to the trial court for an order compelling the attendance of Ms. Bidorf. Snow argues that had the caseworker been compelled to testify by the trial court, she would have provided favorable testimony regarding the progress of Snow in her parenting classes and treatment program.
 {¶ 37} Snow's argument, however, is undermined by the fact that following the decision of the magistrate setting an additional hearing date and referring the matter to the trial court, Snow's counsel filed a motion on May 23, 2006, to terminate the final hearing date on June 7, 2006, and release the subpoena issued for that hearing. In the motion, Snow unequivocally stated that she no longer wanted to provide the testimony of any further witnesses, and rested her case. The magistrate sustained Snow's motion on May 31, 2006, and terminated the final hearing date. Clearly, it was Snow's decision to not have Ms. Bidorf testify. Thus, she cannot now claim error for a decision she is responsible for.
 {¶ 38} Snow's final assignment of error is overruled.
 IV {¶ 39} All of Snow's assignments having been overruled, the judgment of the *Page 11 
trial court is affirmed.
GRADY, J. and GLASSER, J., concur.
(Hon. George M. Glasser, retired from the Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Johnna M. Shia James C. Staton Hon. Nick Kuntz
[1] Snow was later convicted for child endangerment on December 22, 2004. *Page 1