[Cite as *In re Adoption of E.E.R.K.*, 2014-Ohio-1276.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

IN THE MATTER OF:                    :

THE ADOPTION OF E.E.R.K.             :          C.A. CASE NO.    2013 CA 35

                                     :          T.C. NO.    86114

                                     :          (Civil appeal from Common
                                                 Pleas Court, Probate Division)

                                     :

                                     :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ____28th____ day of ____March____, 2014.

· · · · · · · · · ·

JAY M. LOPEZ, Atty. Reg. No. 0080819, 18 E. Water Street, Troy, Ohio 45373
        Attorney for Appellant, N.M.

RICHARD HEMPFLING, Atty. Reg. No. 0029986, 15 W. Fourth Street, Suite 100, Dayton,
Ohio 45402
        Attorney for Appellees, R.D.K. and M.A.K.

JONATHAN E. FAULKNER, Atty. Reg. No. 0078359, 7700 N. Main Street, Dayton, Ohio
45415
        Attorney for Appellee, S.M.
· · · · · · · · · ·

DONOVAN, J.

{¶ 1} Petitioner-appellant N.M. ("N.") appeals from an order of the Miami County Court of Common Pleas, Probate Division, granting petitioner-appellees R.D.K. and M.A.K.'s (hereinafter "the Ks") petition to adopt a minor child, E.E.R.K. N., the putative father of E.E.R.K. filed a timely notice of appeal with this Court on October 2, 2013.

{¶ 2} N. met petitioner-appellee S.M. ("S.") in May of 2012, and the two began dating shortly thereafter. Some time in June of 2012, N. and S. began a sexual relationship. In July of 2012, S. and N. discovered that she was pregnant after taking a home pregnancy test. A genetic test was later performed which confirmed that N. is the biological father of E.E.R.K. Approximately two or three weeks after the discovery of the pregnancy, S. and N.'s relationship ended.

{¶ 3} Throughout the pregnancy, S. lived at her grandmother's house. N., only eighteen at the time of the relationship, lived with his parents at their home. N. had just graduated from high school and worked full-time at Menard's, a home improvement store located in Tipp City, Ohio. After their relationship ended, S. and N. communicated primarily via text messages, with the occasional telephone conversation. N. informed S. that he wanted to keep the child, get married, and possibly join the military in order to provide for her. S. refused N.'s offer of marriage and began exploring adoption as a realistic alternative.

{¶ 4} During the remainder of the pregnancy, S. and N. sporadically communicated through text messages. From the beginning of December 2012 until March 6, 2013, when E.E.R.K. was born, S. and N. did not communicate at all. We note that on February 22, 2013, N. filed a timely application to join the putative father registry.

{¶ 5} On March 7, 2013, the day after E.E.R.K. was born, S. filed a pre-placement

application with the Miami County Probate Court seeking to place the minor child with the Ks for the purposes of adoption. The trial court held a hearing on March 13, 2013, during which E.E.R.K. was formally surrendered to the Ks. The trial court also issued a pre-adoption custody order.

{¶ 6} After a home study with the Ks, the trial court filed an entry approving placement on April 29, 2013. On May 3, 2013, the Ks filed a petition to formally adopt E.E.R.K. On August 14, 2013, the trial court held a hearing in order to determine whether the consent of N., the putative father, was necessary to go forward with the adoption. The trial court issued a decision on September 4, 2013, finding that N.'s consent was not required for the adoption to be finalized.

{¶ 7} It is from this judgment that N. now appeals.

{¶ 8} N.'s first assignment of error is as follows:

{¶ 9} "THE TRIAL COURT ERRED IN PLACING THE MINOR CHILD IN THE CARE OF THE PROSPECTIVE ADOPTIVE PARENTS AS THE APPELLANT TIMELY FILED WITH THE PUTATIVE FATHER REGISTRY."

{¶ 10} In his first assignment, N. contends that the trial court erred when it issued an interlocutory order placing E.E.R.K. in the care of the Ks despite his action of filing a timely application with the putative father registry. In support of his argument, N. relies on R.C. 3107.064, which states as follows:

(A) Except as provided in division (B) of this section, *a court shall not issue a final decree of adoption or finalize an interlocutory order of adoption* unless the mother placing the minor for adoption or the agency or

attorney arranging the adoption files with the court a certified document provided by the department of job and family services under section 3107.063 of the Revised Code. The court shall not accept the document unless the date the department places on the document pursuant to that section is thirty-one or more days after the date of the minor's birth.

{¶ 11} Pursuant to the express language in R.C. 3107.064, the statute only applies when the trial court has issued a final decree of adoption, or in the event the court finalized an interlocutory order of adoption. By its explicit terms, the statute does not apply when the trial court has merely issued an initial interlocutory order placing a minor child with adoptive parents. Therefore, N.'s reliance on R.C. 3107.064 is misplaced since the statute has no application regarding the trial court's issuance of an interlocutory order placing E.E.R.K. in the care of the Ks. The interlocutory order was neither a final decree of adoption nor an attempt to finalize an interlocutory order of adoption. R.C. 3107.064 has no effect or bearing on the trial court's initial order of placement.

{¶ 12} N.'s first assignment of error is overruled.

{¶ 13} N.'s second and final assignment of error is as follows:

{¶ 14} "THE TRIAL COURT ERRED IN FINDING THE FATHER'S CONSENT UNNECESSARY FOR THE ADOPTION."

{¶ 15} In his final assignment, N. argues that the trial court erred when it found that his consent was unnecessary to complete the adoption, even though he was the putative father. Specifically, N. contends that the evidence does not support a finding that he willfully abandoned S. during her pregnancy or that he abandoned or failed to support his

minor child.

{¶ 16} "A parent has a fundamental right to care for and have custody of his or her child." *In re K. C.,* 2d Dist. Montgomery No. 22243, 2008-Ohio-2593, ¶ 10. Those rights are terminated when a child is adopted. Thus, in Ohio, putative fathers must consent to any adoption unless one of the exceptions set forth in R.C. 3107.07 applies. That statute provides, in pertinent part, as follow:

> Consent to adoption is not required of any of the following:
>
> * * *
>
> (B) The putative father of a minor if either of the following applies:
>
> (1) The putative father fails to register as the minor's putative father with the putative father registry established under section 3107.062 of the Revised Code not later than thirty days after the minor's birth;
>
> (2) The court finds, after proper service of notice and hearing, that any of the following are the case:
>
> (a) The putative father is not the father of the minor;
>
> (b) The putative father has willfully abandoned or failed to care for and support the minor;
>
> (c) The putative father has willfully abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or the minor's placement in the home of the petitioner, whichever occurs first.

*In re B.A.H.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441.

{¶ 17} "Any exception to the requirement of parental consent [to adoption] must

be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976). Thus, in order to determine that N.'s consent is not required, S. and the Ks must demonstrate by clear and convincing evidence the existence of the exception to the consent requirement. *In re Adoption of Hart*, 62 Ohio App.3d 544, 552, 577 N.E.2d 77 (6th Dist.1989). Clear and convincing evidence requires a level of proof that produces a firm belief as to the facts sought to be established. *In re A.U.,* 2d Dist. Montgomery Nos. 20583, 20585, 2004–Ohio–6219, ¶ 17.

{¶ 18} Whether S. and the Ks have met this burden is a determination for the probate court that will not be disturbed on appeal unless the decision is against the manifest weight of the evidence. *Id*. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 281, 376 N.E.2d 578 (1978). The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice' that there must be a reversal of the judgment and an order for a new trial." *Steagall v. Crossman,* 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

{¶ 19} Initially, we must determine whether clear and convincing evidence was adduced at the consent hearing which established that N. willfully abandoned S. or the baby, or failed to care for or support the minor child. As we noted in *In re B.A.H.*, R.C. 3107.07 does not define the term "willfully." "'Willful' is defined as 'proceeding from a conscious motion of the will; voluntary. Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary.' *Black's Law Dictionary* 824 (Abridged Fifth Ed. 1983)." *Id.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441, at ¶ 22.

{¶ 20} On the record before us, it is undisputed that N. never provided any financial, material, or emotional support during S.'s pregnancy. N. testified that he never even asked S. if she needed anything. The record establishes that while N. sent S. a series of text messages inquiring about the status of her pregnancy, the messages were sent sporadically. With a few exceptions where she did not respond, the record establishes that S. answered the majority of N.'s inquiries in a timely fashion.

{¶ 21} Conversely, the record of text messages indicates that N. would wait days in many instances before responding to S.'s messages, if he answered her at all. One such instance occurred on November 8, 2012, when S. texted N. to inform him that the baby was a girl. N. did not respond until late the next night on November 9, 2012, to ask when she found out. S. responded early the next morning. On the morning of November 12, 2012, S. sent a text inviting N. to talk to her about the baby, rather than text message. N. did not respond. The next morning on November 13, 2012, S. sent a message to N. stating that she needed to talk to him about the baby. N. responded by text message stating, "What is it? I'm at work right now." During the ensuing exchange, S. attempted to get N. to call her on his break or when he got home later that evening. S. received no response from N. until

after midnight when he responded that he had fallen asleep.

{¶ 22}   A week later, just after midnight on November 21, 2012, N. sent S. a text inquiring how she and the baby were doing.   S. responded that the baby was very active and she was getting progressively more uncomfortable as the pregnancy advanced.   On November 22, 2012, N. sent a message to S. asking if she would look up some auto parts for him because she worked at an auto parts store at the time.   S. did not respond.   Ten days later on the evening of December 2, 2012, N. sent a text message to S. which stated, "How ya been?"   N. did not attempt to communicate with S. for approximately three months until March 6, 2013, the day E.E.R.K. was born, when he sent a text requesting S. to speak with him.

{¶ 23}   We note that very early in the pregnancy, S. went to N.'s house to speak with him, but he was not home at the time.   S. spoke to N.'s mother instead.   N.'s mother offered to let S. come and live at their house.   N.'s mother testified that she and her husband also offered to adopt the child.   While S. refused both offers, N. testified that he was unaware that his mother was going to make either offer.   N. testified that he never "pushed the idea" of S. moving in to his parents' house and never spoke with S. about the offers. Additionally, we note that while N. initially stated that he was willing to join the military in order to support S. and the child, he never pursued the idea.   At the time of the consent hearing, N. was still living at his parents' house and working at Menard's.

{¶ 24}   Unlike the putative father in *B.A.H.* who made every effort to be involved with and support the mother and child, N.'s sporadic, then non-existent, communication with S., coupled with a complete lack of financial and emotional support establish that he

willfully abandoned S. and the baby, and failed to care for or support the minor child. N. was not involved with his mother's offer of home and shelter to S.. N. himself never even suggested a willingness to raise the child on his own. Additionally, there was no third party involved who attempted to discourage or thwart N.'s involvement with S. or the baby.

{¶ 25} When S. attempted to reach out to him regarding the impending birth of their child, N. made himself available only via text message, and then, only sporadically. Significantly, N. did not try to communicate with S. for the last three months of her pregnancy. After the baby was born, N. only sent her a text message. We further note that even though he was employed, he never offered S. any financial support while she was pregnant nor after she gave birth to E.E.R.K. By his own admission, N. never gave S. any emotional support during the pregnancy.

{¶ 26} We conclude that upon this record, S. and the Ks adduced sufficient evidence to prove, by clear and convincing evidence, that N. willfully abandoned S. and the minor child. Additionally, the evidence in the record is sufficient to prove, by clear and convincing evidence, that N. failed to provide support for the baby. Therefore, we conclude that the trial court did not err in determining that N.'s consent is not required for the adoption of the child.

{¶ 27} N.'s second assignment of error is overruled.

{¶ 28} Both of N.'s assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Jay M. Lopez
Richard Hempfling
Jonathan E. Faulkner
Hon. W. McGregor Dixon, Jr.