OPINION
{¶ 1} Plaintiff-appellant Deborah Stegall appeals from a judgment in favor of defendants-appellees F. Ann Crossman and Winwood, Crossman and Associates, in a legal malpractice action. Stegall contends that the trial court erred in excluding evidence involving provisions from the Code of Professional Responsibility. We conclude that any probative value the admission of the provisions from the Code of Professional Responsibility might have would be substantially outweighed by the danger of unfair prejudice in this case. The alleged violations of the Code of Professional Responsibility bear no relationship to the negligence claim for which damages are being sought. We conclude that the trial court's decision to exclude the provisions of the Code of Professional Responsibility was not an abuse of discretion. Stegall also contends that the judgment in favor of Crossman is against the manifest weight of the evidence. After reviewing the entire record, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and a new trial ordered. We conclude that the judgment in favor of Crossman was not against the manifest weight of the evidence.
 {¶ 2} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} Deborah and Victor Stegall were married in November, 1982. Deborah and Victor had one child together, and Victor had two children prior to his marriage with Deborah. By September, 1995, there was marital discord between the Stegalls, and Ann Crossman agreed to represent Deborah. Victor, represented by Matthew Fox, filed a complaint for divorce against Deborah in August, 1997. Deborah sought an order of the trial court providing temporary spousal and child support. The trial court ordered temporary spousal support in the amount of $1,000 a week, and temporary child support in the amount of $1,027 a week.
 {¶ 4} A trial date was set for August 3, 1998, and Crossman showed up prepared to go to trial. The parties spent the day negotiating a settlement. At the end of the day, Crossman read an agreement into the record. Victor and Deborah testified under oath that they heard the agreement read into the record and agreed that it was fair and equitable. Deborah also testified that she understood the terms and conditions of the agreement read into the record, and she requested that the trial court incorporate the agreement into a judgment and final decree of divorce.
 {¶ 5} In October, 1998, the trial court entered a judgment and final decree of divorce. The trial court designated Deborah the residential parent of their minor child and ordered that Victor pay $6,490 a month in child support. The trial court found that there would be no payment of spousal support by either party. The trial court stated that the provision of spousal support would continue only until the division of property had been accomplished, and would be subject to the continuing jurisdiction of the trial court until the division of property was accomplished. The trial court also stated that it recognized that the payments ordered in connection with the division of property would be sufficient for Deborah's maintenance and support.
 {¶ 6} The trial court ordered that Victor provide health insurance, if available at a reasonable cost, for his children and that he would be responsible for the first $100 of uninsured medical, dental, and optical expenses incurred by each child each year. The trial court further ordered that the costs of the remaining medical, dental, optical and all psychological expenses were to be shared by Victor and Deborah in amounts equal to their percentage of total income: 99% to Victor and 1% to Deborah.
 {¶ 7} The trial court ordered that Deborah retain the marital residence, household goods, furniture, furnishings, Hummel collection, perfume bottles, jewelry, and furs. The trial court ordered that Victor retain the personal property he currently had in his possession. The trial court ordered that Deborah retain two vehicles and Victor retain one vehicle. The trial court ordered that Deborah was entitled to one-half of the retirement plan. The trial court found that neither party was entitled to the custodial accounts of Victor's two children.
 {¶ 8} The trial court ordered that Deborah was entitled to retain a separate life insurance policy in Victor's name, with Deborah designated as beneficiary. The trial court ordered that Victor use his best efforts to allow Deborah to remain on the medical insurance issued through Southland Family Medical Associates, Inc., at no cost to Victor, and with the premium payments to be made by Deborah. The trial court ordered that Deborah be entitled to retain the financial accounts that were in her name. The trial court further found that "the parties have agreed that the Defendant shall receive as her division of marital property and the accounts $1,352,826.00 to be paid as follows: $500,000.00 shall be paid within sixty (60) days of August 3, 1998. After that, the amount to be paid by the Plaintiff to the Defendant shall be $50,000.00 per year at an interest rate of ten percent (10%) until paid in full. The Plaintiff shall designate the Defendant as a beneficiary on the pension account to protect or secure her interest in this division of property until such time as this division of property is complete."
 {¶ 9} The trial court then ordered that Victor pay Deborah $500,000 within sixty days of August 3, 1998 and that "the balance which shall be due and owing to the Defendant shall be paid at the rate of $50,000 per year on January 1 of each year with ten percent (10%) interest accruing on the unpaid balance, which includes principal and interest." The trial court further ordered that Victor designate Deborah as beneficiary on his retirement accounts, to protect or secure Deborah's interest in the division of marital property until the division was completely achieved. The trial court ordered that "[u]ntil such time as the $500,000 has been paid by the Plaintiff to the Defendant, the Plaintiff shall continue to pay temporary spousal support in the amount of $1,027 per week."
 {¶ 10} In January, 1999, Deborah filed a motion for contempt and motion to reduce to judgment alleging, among other things, that Victor had failed to pay the $500,000 within sixty days of August 3, 1998. A contempt hearing was held, and the trial court found Victor to be in contempt. Having previously paid Deborah $20,000, Victor paid Deborah the remaining $480,000.
 {¶ 11} Deborah also filed a motion to vacate the judgment and final decree of divorce pursuant to Civ.R. 60(B). Deborah claimed that several issues, including the division of the medical practice and medical equipment, the Stegall/Frank debt, spousal support, amending the language "10% interest" to "10% increase," and custodial accounts, were discussed on the day of the final hearing, but were not included in the presentation of the agreement to the trial court or in the judgment and final decree of divorce. Victor's counsel, Matthew Fox, was identified as a witness and subpoenaed for a deposition, because he was a party to the negotiations on the day of the final hearing. As a result, Fox withdrew as counsel for Victor and was replaced by Robert Fitzgerald.
 {¶ 12} Deborah voluntarily dismissed the first branch of her motion to vacate on the issue of the medical practice. After a hearing, the trial court dismissed all other branches of the motion to vacate concluding that there was not "anything new or anything that was not disclosed or with reasonable diligence could not be obtained." The trial court also ordered that "as previously set out in the Judgment and Final Decree of Divorce, Defendant shall receive from the Plaintiff as and for her interest in the division of property to be retained by the Plaintiff (which property includes the Southland Family Medical Practice) the total lump sum judgment of $852,826.00 plus 10% interest to be paid at the rate of $50,000.00 per year effective until paid in full by the Plaintiff." At the insistence of the trial court, the words "total lump * * * judgment" were crossed out and initialed by Crossman and Fitzgerald. Crossman had drafted the proposed entry and included the terms, per the suggestion of Art Hollencamp, a collections attorney, in order to include language that would create a lien against Victor's property.
 {¶ 13} In December, 1999, Deborah terminated her attorney-client relationship with Crossman. Deborah subsequently filed a legal malpractice action against Crossman and Winwood, Crossman and Associates, Crossman's law firm, alleging that Crossman acted negligently in her representation of Deborah, causing Deborah to sustain injury and loss. This case proceeded to a jury trial. The jury returned a verdict in favor of Crossman and Winwood, Crossman and Associates. Based on the jury's verdict, the trial court rendered judgment in favor of Crossman and Winwood, Crossman and Associates. From this judgment, Deborah Stegall appeals.
 II {¶ 14} Stegall's first assignment of error is as follows:
 {¶ 15} "The court erred when it refused to allow evidence or testimony concerning the code of professional responsibility for any purpose in a legal malpractice case which arose over a divorce settled by agreement. The court further erred to the prejudice of the appellant by rejecting evidence of acts of violence during marriage, even though it was admissible to show that the attorney knew that the client had reason to fear confronting the husband over items that might make him `snap.'"
 {¶ 16} Stegall contends that the trial court erred in excluding evidence involving provisions from the Code of Professional Responsibility. Specifically, Stegall contends that "[t]he code of professional responsibility contains Disciplinary rules and ethical considerations which lawyers have a duty to follow. A deliberate violation of a rule or ethical consideration may be admissible to impeach the credibility of the lawyer who is violating the rule for the purpose of covering up the prior error."
 {¶ 17} Stegall contends that the provisions from the Code of Professional Responsibility are relevant to her malpractice claim, because Crossman violated the provisions by failing to withdraw as Stegall's counsel and by filing an insupportable 60(B) motion in order to prevent discovery of her malpractice in the divorce case. Stegall also contends that the provisions are admissible to refute Crossman's defense that she filed the insupportable 60(B) motion at her client's direction.
 {¶ 18} "A trial court's decision to exclude evidence is not grounds for reversal unless the record clearly demonstrates that the trial court abused its discretion and that the complaining party has suffered a material prejudice. Columbus v. Taylor
(1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382. An abuse of discretion * * * implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Tracy v. Merrell-DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 152,569 N.E.2d 875."Rahawangi v. Alsamman, Cuyahoga App. No. 83643, 2004-Ohio-4083, at ¶ 49.
 {¶ 19} Stegall filed a legal malpractice action against Crossman alleging that Crossman acted negligently in her representation of Stegall, causing Stegall to sustain injury and loss. Stegall's claim of negligence is based on Crossman's actions the day of the August 3, 1998 hearing. She alleges, in essence, that Crossman did not adequately protect her interests at that hearing.
 {¶ 20} The Ohio Supreme Court has held that in order to establish legal malpractice based on negligent representation, the plaintiff must prove: "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Vahila v. Hall, 77 Ohio St.3d 421, 427,1997-Ohio-259, 674 N.E.2d 1164.
 {¶ 21} Stegall has failed to show how Crossman's conduct, in failing to withdraw as Stegall's counsel and filing an insupportable 60(B) motion approximately a year after the August 3, 1998 hearing, caused her to incur damages. Stegall concedes that Crossman's actions after the August 3, 1998 hearing in violation of the Code of Professional Conduct did not cause her damage in relation to her negligence claim. Stegall contends that the provisions of the Code of Professional Conduct are admissible to show Crossman was "covering up" her negligence from the August 3, 1998 hearing.
 {¶ 22} Evid.R. 403 provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The alleged violations of the Code of Professional Responsibility — essentially, that Crossman was overzealous in her representation of Deborah Stegall by filing a motion for relief pursuant to Civ.R. 60(B) for which there was not an adequate basis — bear no relationship to the negligence claim for which damages are being sought, which essentially alleges that Crossman insufficiently protected Deborah Stegall's interests in the divorce settlement. Any probative value the admission of the provisions from the Code of Professional Responsibility might have would be substantially outweighed by the danger of unfair prejudice in this case. That unfair prejudice is the "forbidden inference" that may arise from proof of a party's prior bad acts — THE INFERENCE that because the party acted badly upon one occasion, she must have acted badly upon the occasion in question. We conclude that the trial court's decision to exclude the provisions of the Code of Professional Responsibility was neither unreasonable, arbitrary, nor unconscionable.
 {¶ 23} Stegall also contends that the trial court erred in excluding testimony from Ronald Solove, an expert witness called by her, regarding "the fact that if a judge made a ruling on a [sic] spousal support before any evidence was presented such a ruling would not have been appropriate." Stegall contends that Solove's testimony would have strengthened her credibility with the jury, because Crossman testified that she told Stegall that the judge informed her that he would not order spousal support, and Stegall testified that Crossman never told her that information.
 {¶ 24} A review of Solove's excluded testimony shows that the trial court did not strike evidence from the record that would demonstrate "the fact that if a judge made a ruling on a [sic] spousal support before any evidence was presented such a ruling would not have been appropriate." Solove's excluded testimony was to the effect that he understood that the judge made a representation that due to the property division he would not award spousal support, and that Solove believed this ruling would have been inappropriate, due to Dr. Stegall's substantial income, the duration of the marriage, and the huge difference in the parties' earning abilities. Solove's testimony, if admitted, would not have corroborated, or otherwise strengthened Stegall's testimony that Crossman never told her that the judge would not award spousal support. We conclude that the trial court's decision to exclude this portion of Solove's testimony was neither unreasonable, arbitrary, nor unconscionable.
 {¶ 25} Although Stegall states in her first assignment of error that the trial court erred in rejecting evidence of acts of violence during the marriage, neither party addresses this issue in their brief. Therefore, we decline to review this issue.
 {¶ 26} We conclude that the trial court did not abuse its discretion in its evidentiary rulings challenged by Stegall. Accordingly, Stegall's first assignment of error is overruled.
 III {¶ 27} Stegall's second assignment of error is as follows:
 {¶ 28} "The judgment of the trial jury is against the weight of the evidence * * *."
 {¶ 29} In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice" that there must be a reversal of the judgment and an order for a new trial. Pryor v. Tooson, Clark App. No. 2002-CA-91, 2003-Ohio-2402, at ¶ 29, citations omitted. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. MorrisCo. v. Foley Const. Co. (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578, citations omitted.
 {¶ 30} Stegall essentially contends that at the August 3, 1998 hearing, she did not understand the agreement that was read into the record by Crossman, because Crossman failed to fully inform her of what she was agreeing to and the consequences of that agreement. Stegall contends that there are two versions of what Crossman communicated to Stegall on the day of the final hearing, i.e., Stegall's version and Crossman's version, but that Crossman's version is not credible. Specifically, Stegall argues that "the testimony of a lawyer who says she explained to a client that she would never receive the $852,826.00 in property settlement along with the fact that she would never receive any spousal support from a man who was making $750,000, and that instead of getting a tax free $852,826.00 property settlement, she was going to have to pay income tax on the $50,000.00 a year because of the 10% interest, isn't credible. It isn't credible that an experienced divorce lawyer would explain those things to a client and still expect a client to say `Yes.' It is, however, credible that when a client is expecting to go to trial and the entire day is spent negotiating and the lawyer is tired and gets confused while reading the agreement in the record, that a record does get created that says that the $852,826.00 will only receive a maximum of $50,000.00 payment rather than a principle payment of $50,000.00 plus 10% interest which probably was what was supposed to be read into the record. No explanation is possible that a $750,000.00 income husband with a sixteen (16) year marriage is not going to be ordered to pay some spousal support to a wife who has been out of the labor market for a number of years and who has raised a child. If the divorce court did, in fact, say as Ann Crossman testified, that no way was the judge going to allow any spousal support, then the lawyer had the duty to present evidence and try the case."
 {¶ 31} Crossman testified that she informed Stegall that the judge was clear that he would not grant any spousal support, and that the judge also indicated in Stegall's presence that he would not grant any spousal support. Crossman testified that she explained the agreement to Stegall, and that Stegall indicated that she understood the agreement prior to it being read into the record. Crossman testified that she encouraged Stegall to ask questions. Crossman testified that Stegall was in control in the courtroom when the agreement was read into the record. The record shows that at the August 3, 1998 hearing, Crossman examined Stegall after reading the agreement into the record, and Stegall testified under oath as follows:
 {¶ 32} "Q. You heard the terms and conditions which were read into the record today on your settlement; is that correct?
 {¶ 33} "A. Yes.
• * *
 {¶ 34} "Q. And do you understand the terms and conditions which were read into the record today?
 {¶ 35} "A. Yes.
• * *
 {¶ 36} "Q. And with the issues of accounts which have been unaccounted for, are you in agreement with the terms and conditions of this agreement read into the record today?
 {¶ 37} "A. Yes, I am.
 {¶ 38} "Q. Are you requesting that this Court make it a final order and incorporate it into the judgment and final decree of divorce?
 {¶ 39} "A. Yes, I am."
 {¶ 40} The trial court then examined Stegall, and Stegall testified as follows:
 {¶ 41} "THE COURT: Mrs. Stegall, under all of the facts and circumstances, as you understand them, you are satisfied that this agreement is fair and equitable to you?
 {¶ 42} "MRS. STEGALL: Are we talking agreement only, Your Honor?
 {¶ 43} "THE COURT: I thought the question was pretty simple.
 {¶ 44} "MRS. STEGALL: Then yes."
 {¶ 45} Keith Kearney, a domestic relations attorney and a former chairperson of the Dayton Bar Association Family Law Committee, testified on the behalf of Crossman. He testified that he has conducted domestic relations related seminars and participated in formulating rules of practice in the Montgomery County Domestic Relations Court. Kearney testified that he reviewed the motions, pleadings, and depositions in this case and the transcript of the August 3, 1998 hearing. Kearney testified that he had formed certain opinions to a reasonable degree of legal probability.
 {¶ 46} Kearney testified as follows:
 {¶ 47} "Q. Do you have an opinion, based upon what you know about this case and your experience, as to whether Ms. Crossman satisfied the standard of care in the representation of Deborah Stegall?
 {¶ 48} "A. I do.
 {¶ 49} "Q. And what is your opinion?
 {¶ 50} "A. I believe Ms. Crossman did satisfy that standard of care.
 {¶ 51} "Q. And based upon the facts you've reviewed and the documents and your experience, do you have an opinion as to whether Mrs. Crossman did anything to cause Mrs. Stegall to suffer any loss or damage?
 {¶ 52} "A. No, she did not."
 {¶ 53} Kearney also testified that if Dr. Stegall failed to honor his yearly obligations, it was within the trial court's discretion to accelerate the entire $852,826 debt and give Stegall a judgment that she could collect upon. Kearney testified that Stegall could then convert the judgment into a certificate of judgment and attach it as a lien on real property or she could request the court to enforce the judgment by garnishing Dr. Stegall's wages or bank accounts. Kearney testified that the $852,826 was properly secured based on Stegall being designated as beneficiary to Dr. Stegall's retirement plan and Stegall being entitled to purchase a life insurance policy on Dr. Stegall. Kearney testified that if Dr. Stegall attempted to deplete the funds in his retirement account, Stegall could petition the trial court for a security interest against those funds. Kearney also testified that Stegall would also be able to secure her property division by filing a motion for contempt if Dr. Stegall failed to honor his obligations. (At the oral argument of this appeal, Deborah Stegall's attorney did not disagree with this court's observation that Ms. Stegall could presumably collect the balance owing on the $852,826 obligation at Dr. Stegall's death, assuming that she survives him. Since the obligation has been awarded to Ms. Stegall as her property, she can presumably assign it to others during her life, or by her will, should she predecease Dr. Stegall. Thus it is not the case that Ms. Stegall, her heirs and assigns can never receive the entire principal amount of Dr. Stegall's obligation to her, as her attorney has been wont to argue.)
 {¶ 54} Kearney testified that a domestic relations attorney should consider a trial judge's opinion stated in chambers regarding spousal support, and that the trial judge in this case would have been justified in denying spousal support based on the size of the property division that Stegall would be receiving. Kearney stated that in his opinion, Stegall received a fair and equitable divorce settlement.
 {¶ 55} Stegall's expert witness, Ronald Solove, provided testimony that conflicted with Kearney's testimony, but Solove did testify to the following:
 {¶ 56} "Q. I want you to assume for a moment, Mr. Solove, let's see if your opinion changes at all. I want you to assume that Mrs. Stegall was fully apprised of the effect of the settlement agreement that she was entering into, that she was fully apprised that it meant that she wasn't going to get spousal support, and that she was fully apprised that it was only going to be paid off on a $50,000 per year minimum payment basis. I want you to assume those things. I want you to assume further that she said, okay, I agree with that. I don't want to try the lawsuit. I agree to settle on those terms. Would Ann Crossman have done anything wrong under those circumstances, Mr. Solove?
 {¶ 57} "A. If things were different, things would be different.
 {¶ 58} "Q. On those terms. Would Ann Crossman —
 {¶ 59} "A. If that were the facts of this case and it was true that Mrs. Stegall understood that she would receive the interest payments but never be entitled to enforce the basic change, that was clearly explained to her and that was the evidence, I would have to agree with you that Ms. Crossman did her job. All right? If that's true, but those are not the facts as I have them in my preparation for this matter.
 {¶ 60} "Q. I understand that you have a different set of facts that you've assumed.
 {¶ 61} "A. Correct."
 {¶ 62} Based on the foregoing testimony, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and a new trial ordered. Although Stegall's testimony conflicts with the testimony of Crossman, we must presume that the findings of the trier of fact are correct, because the trier of fact is best able to observe the witnesses and use those observations in weighing the credibility of witness testimony.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,81, 10 OBR 408, 461 N.E.2d 1273. After reviewing the entire record, we conclude that the judgment in favor of Crossman is not against the manifest weight of the evidence.
 {¶ 63} Stegall's second assignment of error is overruled.
 IV {¶ 64} Both of Stegall's assignments of error having been overruled, the judgment of the trial court is affirmed.
Grady and Young, JJ., concur.