[Cite as *In re Adoption of V.R.K.*, 2018-Ohio-4881.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| IN THE MATTER OF THE | : | Appellate Case No. 2018-CA-34 |
| ADOPTION OF: V.R.K. | : | |
| | : | Trial Court Case No. 10910AD |
| | : | |
| | : | (Appeal from Probate Court) |
| | : | |
| | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of December, 2018.

. . . . . . . . . . .

WILLIAM R. ZIMMERMAN, JR., Atty. Reg. No. 0078925, 108 E. Poplar Street, Sidney, Ohio 45365
    Attorney for Appellant

MICHAEL R. VOORHEES, Atty. Reg. No. 0039293, 11159 Kenwood Road, Cincinnati, Ohio 45242
    Attorney for Appellees

. . . . . . . . . . . .

HALL, J.

{¶ 1} C.H., the putative father of V.R.K., appeals from the trial court's decision and judgment entry finding that his consent to the child's adoption was not required under R.C. 3107.07(B)(2)(b).

{¶ 2} C.H. advances two assignments of error. First, he contends the trial court erred in not considering whether he "willfully" failed to care for and support V.R.K. Second, he claims the trial court's finding that he failed to care for and support the child was against the manifest weight of the evidence.

{¶ 3} The record reflects that V.R.K.'s mother, J.C., voluntarily gave the child to a private adoption agency in March 2018, just days after the child's birth. The agency promptly placed the child with appellees J.K. and M.K., who filed a petition to adopt. Although putative father C.H. did not consent to adoption, the petition alleged that his consent was not required under R.C. 3107.07(B)(2)(b) because he (1) was not the child's father, (2) willfully abandoned or failed to care for and support the child, and/or (3) willfully abandoned J.C. during her pregnancy and up to the time of her surrender of the child or the child's placement in the petitioners' home. The matter proceeded to a June 28, 2018 hearing to resolve the need for C.H.'s consent. Based on the evidence presented, the trial court made the following findings of fact:

Mother and Putative Father began dating sometime in the spring of 2017. They broke off their relationship several months later.

In early July, 2017, Mother found out she was pregnant. She told Putative Father about the pregnancy and informed him he was the child's father. They mutually decided to try to work out their relationship. Mother

agreed to move in with Putative Father at his mother's house in Sidney, Ohio. Putative Father promised to quit drinking and to get a job.

Sometime during the autumn of 2017, Mother broke off their relationship again and moved out of Putative Father's mother's house. Mother contended Putative Father was still drinking and had not obtained a job. Her contention regarding drinking was corroborated shortly after the breakup when Putative Father encountered legal issues related to alcohol use.

Mother moved in with her grandmother, who also lived in Sidney, Ohio. She also blocked Putative Father on her cell phone and on Facebook. Evidence showed Putative Father tried to text Mother several times shortly after their breakup and then again after the baby was born. Mother did not respond to the messages.

Putative Father knew where Mother was living and where her grandmother's house was located. Testimony of Putative Father and his mother indicates they went by the home where Mother was living a few times, but they contend no one was home.

There is extensive evidence that Putative Father communicated frequently with Mother's mother, with whom Mother was not living, through Facebook Messenger. It appears that their conversations were centered on Putative Father's desire to get back with Mother and his interest in being involved in the child's life. Nothing ever came of those conversations.

Putative Father's mother did communicate a few times with Mother.

On January 1, 2018, Mother informed her that she decided to pursue an adoption plan for V.R.K. Putative Father's mother expressed her displeasure with the idea.

V.R.K. was born on March 6, 2018 in Sidney, Ohio. Mother signed a permanent surrender agreement with the adoption agency on March 9, 2918, which was filed and approved in Greene County Juvenile Court. The adoption agency placed the child with Petitioners the same day. The child has been in Petitioners' continuous care since that date.

Putative Father contends that he (and his mother) offered to throw a baby shower for Mother before V.R.K. was born, and to buy diapers and other necessities after her birth. There is no evidence that those offers ever materialized.

There is no evidence that Putative Father ever actually provided any support for V.R.K. after she was born. He did not set up support payments through the Child Support Enforcement Agency. He did not pay any portion of Mother's medical expenses during the pregnancy after they split up and did not pay anything toward V.R.K.'s care and support after her birth. There is also no evidence that Putative Father ever actually provided any non-monetary support to the child, in the form of clothes, diapers, formula or other baby essentials. Even if Putative Father's testimony that he *offered* to assist is true, the fact is he did not follow through and actually provide anything. Putative Father admitted that at trial.

Mother and Putative Father have never been married to each other.

Putative Father is not named as the father on V.R.K.'s birth certificate. Putative Father did not file a parentage action before Petitioners filed the Petition for Adoption. He also did not attempt to establish his parent-child relationship with V.R.K. by an acknowledgment of paternity or through and administrative determination. Putative Father did not institute any proceedings in Juvenile Court to seek custody of V.R.K.

Mother was a credible witness. Her testimony was clear, concise and confident.

Likewise, Putative Father's mother was a credible witness. However, her testimony carries little weight because it was not substantially relevant to the legal issues in this case.

Putative Father's credibility was questionable to this Court. Although he was polite and respectful during his testimony, his demeanor and hesitancy in answering questions clouded the believability of his responses in many instances. He certainly did not corroborate his claims of *offering* support for the child with any evidence that he actually did so. Putative Father simply did not convey to the Court a sense of complete sincerity in his desire to be a true father to the child. Instead, he left the Court with a distinct impression that his objection to the adoption was for his mother's benefit more so than his own.

The abundance of Exhibits Putative Father offered into evidence were not persuasive. While the Exhibits demonstrate Putative Father's efforts to communicate with others by means of text messaging and

Facebook Messenger, they do not establish any genuine showing of actual support for the Mother or the child.

After the trial, this Court ordered the parties to obtain a paternity test. The parties filed the DNA Test Report with the Court on June 10, 2018. The Report showed a 99.999995% probability that Putative Father is the biological father of V.R.K. Petitioners did not offer any evidence to refute the test results.

(Decision and Judgment Entry, Doc. #26 at 2-4.)

{¶ 4} In its conclusions of law, the trial court recognized that C.H.'s legal status as the putative father made his consent to adoption necessary unless a statutory exception applied. (*Id.* at 5.) The trial court then correctly looked to R.C. 3107.07(B), which sets forth circumstances under which a putative father's consent to adoption is not required. The trial court found that R.C. 3107.07(B)(1) did not apply because C.H. properly had registered on the putative father registry.

{¶ 5} The trial court then turned to R.C. 3107.07(B)(2), which provides that consent is unnecessary if any of the following apply: "(a) The putative father is not the father of the minor; (b) The putative father has willfully abandoned or failed to care for and support the minor; (c) The putative father has willfully abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or the minor's placement in the home of the petitioner, whichever occurs first."

{¶ 6} Based on the evidence presented, the trial court held that C.H. in fact was V.R.K.'s biological father. It also found that C.H. did not willfully abandon V.R.K. or the child's mother. Rather the trial court held that V.R.K.'s mother, J.C., voluntarily broke off

her relationship with C.H. and moved out of his residence before giving birth and placing the child for adoption. Under these circumstances, the trial court declined to find that C.H. willfully had abandoned mother or child.

{¶ 7} The trial court opined that resolution of the case hinged on whether C.H. had "failed to care for and support" the child. On this issue, the trial court noted C.H.'s admission during the hearing that he never actually provided any care or support for V.R.K. Based on the evidence, the trial court characterized his efforts as "empty" offers of support with a "lack of action." (Decision and Judgment Entry, Doc. #26 at 7.) The trial court also rejected C.H.'s argument that J.C. significantly had impeded his efforts to care for and support their child. The trial court found "no evidence that any third party ever remotely interfered with anything Putative Father did or attempted to do toward caring for or supporting the child." (*Id.*). Although J.C. had "blocked" C.H. on social media, V.R.K. was not in J.C.'s care anyway after being placed with the adoption agency. Thus, the trial court rejected the notion that "if you are blocked you are somehow no longer obligated to provide care and support for your child." (*Id.* at 8.) The trial court then reasoned:

> Putative Father admitted he has never actually provided any care or support for V.R.K. He admitted he never contacted the adoption agency to whom Mother surrendered permanent custody of the child, even though he knew or could have easily determined the name and contact information of the agency through the Ohio Department of Job and Family Services. Had he contacted the agency, he could have provided support through that avenue, regardless of whether Mother continued to ignore his messages. The complete lack of Putative Father's care for and support of V.R.K., as

required in R.C. 3107.07(B)(2)(b), is easy to resolve in this case.

The Court is not impressed with the effort Putative Father expended to show his desire to be a real dad to V.R.K. since her birth. He had several weeks between the child's birth and the date Petitioners filed the Adoption Petition in which to take legal action to formally establish his parentage. He did not do anything. He could have attempted to gain custody through Juvenile Court. He did not do anything. The clear message in R.C. 3107.07(B)(2)(b) is that a putative father cannot sit back, do nothing while others care for and support his child, and then claim he deserves to get the child.

It is the decision of this Court that Putative Father failed to care for and support V.R.K. after her birth. Petitioners have met their burden of proof on this element by clear and convincing evidence. Putative Father has failed to refute that evidence with sufficient, credible evidence to the contrary. Accordingly, it is the decision of this Court that the consent of Putative Father to the proposed adoption of V.R.K. is not required.

(*Id.*).

{¶ 8} On appeal, C.H. contends the trial court erred in failing to consider whether his failure to care for and support V.R.K. was "willful." This argument requires interpretation of R.C. 3107.07(B)(2)(b) as well as analysis of the record. As set forth above, the statute makes a putative father's consent to adoption unnecessary if he "has willfully abandoned or failed to care for and support the minor." The initial issue raised by C.H.'s argument is whether "willfully" only modifies "abandoned" or whether it also

modifies "failed to care for and support." This court addressed that issue in *In re Adoption of R.C.A.*, 2d Dist. Montgomery No. 19509, 2003-Ohio-607, reasoning: "Although it is perhaps unclear whether the word 'willfully' modifies only 'abandoned' or also modifies 'failed to care for and support,' this court previously has read [R.C.] 3107.07(B) as requiring a petitioner to establish a willful failure to care for and support a child." *Id.* at ¶ 10, fn. 3, citing *In re of Bachman*, 2d Dist. Montgomery No. 15720, 1996 WL 535320 (Sept. 13, 1996).[1]

{¶ 9} In the present case, the trial court's ruling is perhaps ambiguous as to whether it required proof of a "willful" failure by C.H. to care for and support his child. As evidence that it did not, C.H. cites the trial court's observation that "the law does not give a putative father an excuse of 'justifiable cause' for not providing the child care and support[.]" (Decision and Judgment Entry, Doc. #26 at 8.) The trial court made this observation, however, in the context of pointing out that the "justifiable cause" standard, which is found in R.C. 3107.07(A), applies to a legally recognized parent, not a putative father.

---

[1] The appellees cite *In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, 91 N.E.3d 698, for the proposition that the word "willfully" in R.C. 3107.07(B)(2)(b) modifies only "abandoned" and not "failed to care for and support." We note, however, that *P.L.H.* had nothing to do with whether the word "willfully" modified "failed to care for and support." The issue in the case involved the meaning of "willfully abandoned" as applied to a putative father's treatment of the birth mother. The Ohio Supreme Court was not called on to decide, and did not decide, whether the word "willfully" modified "failed to care for and support." In the course of its analysis, the court did observe that "[a] putative father's failure to care for and support *the minor child* provides a relevant basis under R.C. 3107.07(B)(2)(b) for determining that his consent to the adoption is not required." (Emphasis sic) *Id.* at ¶ 27. But the court's omission of the word "willful" before the word "failure" in this passing reference to an issue not before it does not constitute a holding that the word "willfully" in the statute modifies only "abandoned." In our view, the appellees read too much into *P.L.H.* in making such an argument.

{¶ 10} Other portions of the trial court's opinion support a conclusion that it did require proof of a "willful" failure to care for and support V.R.K. The trial court recognized C.H.'s admission that he never provided any care and support for the child. If this bare failure to provide care and support were sufficient to satisfy R.C. 3107.07(B)(2)(b), the trial court could have stopped its analysis there. But it did not. It proceeded to identify ways in which C.H. could have provided support for V.R.K. despite the fact that the child had been placed for adoption. (*Id.* at 8). That analysis, which supports a determination that C.H.'s failure to provide support was "willful," would have been unnecessary and irrelevant if the trial court believed the mere act of failure to provide support alone satisfied the statute. Moreover, if the burden of going forward is upon the putative father to provide some evidence that failure to provide support is other-than-willful, we believe he has failed in that regard.[2]

{¶ 11} For the foregoing reasons, we reject C.H.'s argument that the trial court erred in failing to expressly state that it had considered whether his failure to care for and support V.R.K. was "willful." Accordingly, his first assignment of error is overruled.

{¶ 12} C.H.'s second assignment of error challenges the weight of the evidence to support the trial court's finding that he failed to provide care and support. More

---

[2] In *re Adoption of Lozan*, 2d Dist. Montgomery No. 7547, 1982 WL 3762 (July 19, 1982), this court clarified an adoption petitioner's burden to prove that a putative father's lack of care and support was "willful." Addressing the consent-to-adoption exceptions in R.C. 3107.07(B), this court reasoned: "[W]e believe that it is sound law that petitioner need only produce evidence of failure to support, and the burden of going forward (not burden of proof) with some evidence of the nonwillfulness is upon the objecting party. Once evidence is introduced on the non-willful failure by the objecting party, the petitioner must prove willful failure by 'clear and convincing evidence.' " *Id.* at *2. In the present case, C.H. *admitted* his failure to support V.R.K., and we see no evidence that this failure was non-willful. In any event, as explained above, the trial court's analysis supports a conclusion that it believed his failure to provide care and support for his child was willful.

specifically, he contends any finding that he "willfully" failed to provide care and support for V.R.K. is against the manifest weight of the evidence. C.H. reasons that his failure to provide support for his child cannot be deemed "willful" for two reasons: (1) the petitioners failed to prove that he was capable of providing support and (2) V.R.K.'s mother, J.C., rejected his offers of support for the child. To buttress his argument, C.H. cites numerous cases for the general proposition that a failure to provide support is not willful where a putative father is incapable of providing support or where offers of support are rejected. Although we have reviewed those cases, the trial court reasonably could have found the two propositions upon which C.H. relies inapplicable on the facts before us.

{¶ 13} "The question of whether a putative father 'has abandoned or failed to care for and support the minor' has been proven by the petitioner by clear and convincing evidence is a determination for the probate court. We may not disturb the judgment of the probate court unless such determination is against the manifest weight of the evidence." *In re Adoption of Woods*, 2d Dist. Montgomery No. 11068, 1989 WL 14719, *2 (Feb. 24, 1989), citing *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987). Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 281, 376 N.E.2d 578 (1978). "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice' that there must be a reversal of the judgment and an order for a new trial."

*Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

{¶ 14} Here C.H.'s argument about a lack of proof that he was capable of providing support for V.R.K. fails because his own hearing testimony supported an inference that he was capable of doing so. Indeed, C.H. testified at the hearing that he tried to provide support for both J.C. and the child but that he was "shut out" and "blocked" or never received a response and could not get in touch with J.C. (*See*, *e.g.*, Hearing Tr. at 12-15, 36.) C.H. never suggested at the hearing that he lacked the capacity to provide any support. It is unconvincing for C.H. to testify at the hearing that he tried to provide support while now insisting that he lacked the ability to provide support. If C.H. tried to provide support for V.R.K. and J.C., as he testified at the hearing, then the trial court reasonably could have inferred from his own evidence that he was capable of providing some support. In light of this determination, we need not dwell on whether C.H.'s claimed unemployment or other circumstances precluded him from providing support for his child.

{¶ 15} With regard to C.H.'s other argument, the trial court recognized that J.C. had attempted to avoid contact with him. It nevertheless reasoned that he could have provided support for the child, who no longer was in J.C.'s care, through the Ohio Department of Job and Family Services or through the adoption agency if he had made any effort to contact those entities. Despite C.H.'s knowledge that V.R.K. had been placed for adoption, the trial court found that he made no real attempt to support the child. It concluded that "Putative Father here is solely responsible for his empty offers of support for V.R.K., but lack of action in providing it." (Decision and Judgment Entry, Doc. #26 at 7.) This finding is supported by the record. Therefore, C.H.'s second assignment of error is overruled.

{¶ 16} The judgment of the Greene County Probate Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

William R. Zimmerman, Jr.
Michael R. Voorhees
Hon. Thomas M. O'Diam