[Cite as *In re Adoption of B.M.M.*, 2024-Ohio-2288.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

IN THE MATTER OF THE ADOPTION
OF B.M.M.

:
:
:    C.A. No. 2024-CA-5
:
:    Trial Court Case No. 2023 AD 11
:
:    (Appeal from Common Pleas Court-
:    Probate Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on June 14, 2024

. . . . . . . . . . .

JEREMY M. TOMB, Attorney for Appellant

KIRK ELLIS, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Petitioner appeals from a judgment of the trial court dismissing his petition to adopt B.M.M. ("the child"). Petitioner is married to the child's mother ("Mother"). The trial court found that the consent of the child's biological father ("Father") was required for the adoption. Father refused to consent, and the court dismissed the petition. Because

Father had failed to register as a putative father, however, his consent to the adoption was not required, and the judgment of the trial court will be reversed. The matter will be remanded for further proceedings.

**Facts and Procedural History**

{¶ 2} The child was born in December 2015; Father is not listed on the birth certificate. Petitioner filed a petition for adoption on July 14, 2023, and Mother filed a consent to the adoption the same day. The petition asserted that Father's consent to the adoption was not required because he had failed without justifiable cause to provide more than de minimis contact with the child for a period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the petitioner. The petition further listed R.C. 3107.07(B)(1), (B)(2), and (K) – other exceptions to the consent requirement -- in support of the argument that Father's consent was not required. On July 15, 2023, an Ohio Putative Registry Certification was filed, which stated that a search had been conducted and no putative father was registered for the child.

{¶ 3} Petitioner requested service upon Father by publication, and the court issued an entry for publication on July 19, 2023. The entry stated that the publication "shall run three consecutive weeks and Proof of Publication shall be filed with this Court upon completion of publication." No proof of publication was filed. A hearing notice was also issued on July 19, 2023, setting the consent hearing for October 11, 2023.

{¶ 4} According to an October 13, 2023 entry, Petitioner, Mother, and Father were present for the October 11 hearing, and Father objected to the adoption on the basis that

his consent was necessary. The court appointed counsel to represent Father, and the consent hearing was continued to November 20, 2023. The court issued its decision dismissing the adoption petition on December 29, 2023.

{¶ 5} Petitioner appeals, raising one assignment of error. Father did not file a responsive brief. The assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE PUTATIVE FATHER'S CONSENT TO THE ADOPTION WAS NOT NECESSARY WHEN THE PUTATIVE FATHER FAILED TO PROPERLY REGISTER WITH THE PUTATIVE FATHER REGISTRY OR TO ESTABLISH PATERNITY BEFORE THE FILING OF THE PETITION FOR ADOPTION.

**The Consent Hearing**

{¶ 6} At the start of the consent hearing, counsel for both parties stipulated to Joint Exhibit 1, genetic testing results from Labcorp from September 2023. These tests were conducted after the adoption petition was filed and showed that Father was the child's biological father. Father and Mother testified at the hearing.

{¶ 7} Father was 26 years old and lived in Springfield at the time of the hearing. Father testified that he had been in contact with the child and Mother for the first year of the child's life but had not seen him in the past seven years. No DNA testing was performed at the child's birth, but Father "knew it was [his] son." Father testified that he applied for DNA testing in 2019 but did not appear for the testing because he did not receive any paperwork. He acknowledged that he had made no attempts to see the child

in the previous two years and that he had not financially provided for him. Father stated that he plays flag football and had seen Mother at football games, but he did not ask about the child because he did not sign the birth certificate and had no rights. According to Father, at the time of the child's birth, Mother did not know who the father was, and Father did not timely register on the putative father registry.

{¶ 8} Mother resided in Urbana at the time of the hearing; the child was almost eight years old. She testified that, although Father had observed the child at a couple of football games, he had had no contact with the child and had not requested any. Mother stated that she did not withhold contact from Father She received notice of court-ordered DNA testing in 2019, and she and the child submitted to the testing, but the matter was closed due to Father's failure to appear. In the previous two years, Mother had not received any financial support or in-kind gifts for the child from Father, and she had done nothing to prohibit Father from supporting the child. She saw Father every Sunday during football season, as Petitioner also plays flag football, and she had resided at the same address with the child for the last two years.

{¶ 9} Mother met Petitioner in 2017, and they married in 2019. According to Mother, Petitioner and the child have "an amazing relationship," and Petitioner is "a great father" to the child, who calls him "dad."

### The Trial Court's Decision

{¶ 10} The trial court noted that there was no dispute that Father had provided no support for the child for approximately seven years and that Joint Exhibit 1 established Father's paternity in September 2023. With respect to the need for Father's consent to

the adoption, the court cited *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 218 N.E.3d 828 (2006), which held:

> The ability of a court to dispense with the consent requirement under R.C. 3107.07(A) is dependent upon the establishment of the parent-child relationship. *In re Adoption of Sunderhaus* (1992), 63 Ohio St.3d 127, 130, 585 N.E.2d 418. Establishing the parent-child relationship requires "judicial ascertainment of paternity." *Id.* at 131, 585 N.E.2d 418. [The supreme court] further explained that "[i]nterpreting R.C. 3107.07(A) as requiring a paternity determination prior to the running of the one-year period comports with the requirements of due process and the plain meaning of its provisions." *Id.* at 132, 585 N.E.2d 418.

*Pushcar* at ¶ 12.

{¶ 11} The trial court found that, because paternity had been established on September 19, 2023, "the running of the one year period wouldn't have begun until September 19, 2023." Accordingly, because the consent hearing was held only two months after the establishment of paternity, the court concluded that it could not find that Father had failed to support or communicate with the child for a one-year period, because the one-year period was "not finished."

{¶ 12} Petitioner argues that Father did not have a right to object to the adoption of the child when he had not properly registered with the Ohio Putative Father Registry or sought a judicial determination of paternity before the filing of the petition for adoption. We agree.

{¶ 13} R.C. 3107 governs adoption. "A parent has a fundamental right to care for and have custody of his or her child." *In re Adoption of K.C.*, 2d Dist. Montgomery No. 22243, 2008-Ohio-2593, ¶ 10. An adoption terminates those rights, and the mother of the child, the father of the child, or a putative father are presumed to have the right to withhold consent to an adoption under R.C. 3107.06(A) through (C). *In re Adoption of H.P.*, 171 Ohio St.3d 453, 2022-Ohio-4369, 218 N.E.3d 828, ¶ 20. A party may overcome this presumption by establishing that an exception to the consent requirement under R.C. 3107.07 applies. *Id.*

{¶ 14} "A putative father is simply a man who might be a child's biological father but who has no legal relationship with the child through marriage to the mother or the establishment of legal paternity." *In re Adoption of H.N.R.*, 145 Ohio St.3d 144, 2015-Ohio-5476, 47 N.E.3d 803, ¶ 16, citing R.C. 3107.01(H).

> Under Ohio law, a "putative father" is a man * * * who may be a child's father and to whom all of the following apply: 1) he was not married to the child's mother at the time of the child's conception or birth; 2) he has not adopted the child; 3) he has not been determined to have a parent child relationship with the child by a court or administrative proceeding that occurred prior to the date a petition to adopt the child is filed; and 4) he has not acknowledged paternity of the child pursuant to R.C. 3111.21-R.C. 311.35.

(Emphasis added.) *In re Adoption of Z.G.A.*, 2d Dist. Greene No. 2015-CA-51, 2016-Ohio-238, ¶ 13.

{¶ 15} "In 1996, Ohio established the Putative Father Registry; if a man registers

as the putative father of a child, he will receive notice, at the address or telephone number he provides, of any petition that may be filed to adopt a minor he claims as his child." *Id.*, citing R.C. 3107.062. "Since establishing a putative-father registry in 1996, Ohio has clearly warned putative fathers that '[a] man who has sexual intercourse with a woman is on notice that if a child is born as a result and the man is the putative father, the child may be adopted without his consent pursuant to" R.C. 3107.07(B). *H.P.* at ¶ 1, citing R.C. 3107.061. "[U]nder Ohio's statutory scheme, putative fathers need not have notice of a birth or even a pregnancy to have their rights foreclosed." *Z.G.A.* at ¶ 20.

{¶ 16} R.C. 3107.07 provides in relevant part:

Consent to adoption is not required of any of the following:

(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

(B) The putative father of a minor if either of the following applies:

(1) The putative father fails to register as the minor's putative father with the putative father registry established under section 3107.062 of the Revised Code not later than fifteen days after the minor's birth;

(2) The court finds, after proper service of notice and hearing, that any of the following are the case:

(a) The putative father is not the father of the minor;

(b) The putative father has willfully abandoned or failed to care for and support the minor;

(c) The putative father has willfully abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or the minor's placement in the home of the petitioner, whichever occurs first.

* * *

(K)   Except as provided in divisions (G) and (H) of this section, a juvenile court, agency, or person given notice of the petition pursuant to division (A)(1) of section 3107.11 of the Revised Code that fails to file an objection to the petition within fourteen days after proof is filed pursuant to division (B) of that section that the notice was given[.]

{¶ 17} The criteria set forth in R.C. 3107.07(A) have no applicability to putative fathers. *In re Adoption of R.C.A.*, 2d Dist. Montgomery No. 19509, 2003-Ohio-607, ¶ 9. In order for a putative father who has timely registered in the putative father registry "to attain the status of one whose consent is required for an adoption," three things must occur: the putative father must file an objection within 14 days after he has been given notice of the filing of an adoption petition, pursuant to R.C. 3107.07(K); he must participate in a hearing on the adoption petition as provided in R.C. 3107.11; and at that hearing, under R.C. 3107.0[7](B)(2), "the court must find that he is the father of the child and that

he did not willfully abandon the child or the mother during the pregnancy or during any period prior to the surrender and/or placement of the child for adoption." *H.N.R.,* 145 Ohio St.3d 144, 2015-Ohio-5476, 47 N.E.3d 803, at ¶ 18.

{¶ 18} As noted above, R.C. 3107.07(A) and (B) distinguish between a "parent of a minor" and a "putative father." The " 'opportunity' interest that a putative father has in developing a parent-child relationship" is "far different from the fundamental liberty interest in raising one's children, which is afforded strong constitutional protections only upon the establishment of a parent-child relationship." *H.N.R.* at ¶ 26, citing *Lehr v. Robertson,* 463 U.S. 248, 256-262, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). "Courts have commented that the rights of a putative father must be balanced with the protection of the best interests of children, including the provision of a permanent and stable home and the completion of the adoption process in an expeditious manner." (Citations omitted.) *Z.G.A.* at ¶ 21.

> When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection under the due process clause. At that point it may be said that he "act[s] as a father toward his children." But the mere existence of a biological link does not merit equivalent constitutional protection. The actions of judges neither create not sever genetic bonds.

*H.N.R.* at ¶ 26, quoting *Lehr* at 261.

{¶ 19} "Any exception to the requirement of parental consent [to adoption] must be

strictly construed so as to protect the right of [biological] parents to raise and nurture their children." *In re Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976).

{¶ 20} In order to show that Father's consent was not required, Petitioner was required to demonstrate by clear and convincing evidence the existence of an exception to the consent requirement. *In re Adoption of B.A.H.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441, ¶ 20, citing *In re Adoption of Hart*, 62 Ohio App.3d 544, 552, 557 N.E.2d 77 (6th Dist.1989). "Clear and convincing evidence" is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of fact "a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 21} Whether a petitioner has met this burden is a determination for the probate court that will not be disturbed on appeal unless the decision is against the manifest weight of the evidence. *B.A.H.* at ¶ 21.

> Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 281, 376 N.E.2d 578 (1978). The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "In determining whether a judgment is against the manifest

weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice' that there must be a reversal of the judgment and an order for a new trial." *Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

*Id.*

**{¶ 22}** Our resolution of this matter is straightforward. We note that Father did not file a written objection to the petition for adoption, although proof of publication also was not filed upon its completion as ordered by the court. These facts are not determinative, however. Most significantly, by failing to register as the child's putative father, Father did not attain the status of one whose consent was required for the adoption pursuant to R.C. 3107.07(B)(1). This fact is dispositive. *See H.N.R.,* 145 Ohio St.3d 144, 2015-Ohio-5476, 47 N.E.3d 803, at ¶ 2 (although putative father's paternity had been established by DNA testing, he had "failed to utilize any of the legal processes available to secure his rights as a putative or legal father at any point prior to the initiation of adoption proceedings"). Father submitted to genetic testing in September 2023 (after the petition was filed) which established that he was the child's biological father, but he was never determined to be the child's legal father. Accordingly, the trial court's reliance on R.C. 3107.07(A) to commence the one-year period set forth therein was misplaced; R.C. 3107.07(A) did not apply to Father Petitioner established, by clear and convincing

evidence, that Father's consent to the adoption was not required based upon the exception set forth in R.C. 3107.07(B)(1) -- he was a putative father who had not registered with the putative father registry as provided by the statute.

**{¶ 23}** Petitioner's assignment of error is sustained.

**{¶ 24}** The judgment of the trial court is reversed, and the matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.